| | |
|---|---|
| 93 | 595 |
| 97 | 437 |
| 93 | 595 |
| 98 | 388 |
| 98 | 617 |
| 93 | 595 |
| 102 | 491 |

## Staunton.

| | |
|---|---|
| 93 | 595 |
| f109 | 655 |

### DIAMOND STATE IRON COMPANY & OTHERS v. ALEX. K. RARIG & CO. AND OTHERS.

#### OCTOBER 1, 1896.

1. CHANCERY PLEADING—*Petition to Rehear—Bill of Review.*—The bill of complainants cannot, under the facts of this case, be considered as a petition to rehear the decree complained of in the original suit, nor as a bill of review. Not as a petition to rehear because the decree is final, nor as a bill of review, because the error is not apparent on the face of the record, and the bill falls far short of the requisites of a bill of review upon the ground of after discovered evidence. The bill is not sworn to, nor was leave obtained to file it, nor does it make the necessary parties, nor is there a suggestion in the bill of any after discovered evidence. For the character of the evidence necessary to support a bill of review see the opinion of the court.

2. RES JUDICATA—*Extent of Application of the Plea of.*—The plea of *res judicata* applies, except in special cases, not only to all matters actually adjudicated on the former hearing, but to every point, which properly belonged to the subject of litigation, or which the parties, exercising reasonable diligence, might have brought forward at the time.

Appeal from a decree of the Circuit Court of Rockbridge county pronounced March 19, 1896, in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*T. J. & F. S. Kirkpatrick* and *Winborne & Batchelor*, for the appellants.

*William A. Anderson* and *Hugh A. White,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The single assignment of error in the petition for an appeal in this case is to the action of the Circuit Court of Rockbridge county in sustaining the demurrer to the petitioners' bill.

The bill filed March 19, 1896, by the Diamond State Iron Company and others on behalf of themselves and all other creditors of The Alex. K. Rarig Company, a corporation chartered by the Circuit Court of Rockbridge county, Va., August 30, 1890, against The Alex. K. Rarig Company, Alex. K. Rarig & Company, and numerous other parties, stockholders or subscribers to the stock of The Alex. K. Rarig Company, avers that the complainants are creditors of The Alex. K. Rarig Company, and after setting out their respective demands, the amounts thereof, &c., it says that on the 9th day of February, 1892, The Alex. K. Rarig Company conveyed all of its assets to J. E. Mullen, trustee, for the benefit ratably of all its creditors; that on the third Monday in March, 1892, the Southern Railway Supply Company, a supply lienor of The Alex. K. Rarig Company, filed a bill in the Circuit Court of Rockbridge county, on behalf of itself and all other creditors, against The Alex. K. Rarig Company, and Mullen, trustee, for the specific object of enforcing its lien, and, incidentally, for having an account stated of all liens and their priorities; that the Pocahontas Coal Company also filed a bill in the same court against the same defendants for the enforcement of its supply lien; that on the 20th of April, 1892, The Morgan Engineering Company and others filed their bill of complaint in the Corporation Court of the city of Buena Vista against the same defendants, the objects of which were to have the deed of trust of February 9, 1892, to Mullen, trustee, administered under the supervision and

direction of the court, to require the trustee to give bond, to settle his accounts, to have a proper account taken of the debts due by The Alex. K. Rarig Company, their respective priorities as liens on the corporate assets, and a sale of the trust property; that this last named cause was removed to the Circuit Court of Rockbridge county, and consolidated with the other two causes, and that in the consolidated causes such proceedings were had that the trustee, Mullen, resigned his position as such and the property and effects of The Alex. K. Rarig Company were committed to R. R. Witt, sheriff of Rockbridge county, and as such, receiver. It is further averred that the receiver, in his report of September 19, 1893, refers to a contract between Alex. K. Rarig & Company of the one part, and the Buena Vista Company and others of the other part, dated August 16, 1890, which provides for the purchase by the parties of the second part from said Alex. K. Rarig & Company of $25,000 at par, of the capital stock of The Alex. K. Rarig Company; that the report states that this amount was paid to said Rarig & Company by The Alex. K. Rarig Company, and asks the judgment of the court whether suit should be brought for the recovery of the amount so paid, and that the court thereupon entered an order directing the receiver to sue if he should be so advised by his counsel, but, at the September term, 1894, before any suit was brought by the receiver, and, without any further report by him on this subject, a decree was entered striking the cause from the docket, and that therefore complainants are advised and aver that this decree was improvidently entered; that the receiver's counsel had not advised against the right to recover the said amount, and that complainants charge that the claim is a good, valid, and just one, and ought to be paid. Complainants here make exhibits, and ask that they be considered as parts of their bill, a copy of the contract of August 16, 1890, referred to, a copy of certain resolutions

passed by the stockholders' meeting of The Alex. K. Rarig
Company on September 5, 1890, and a copy of the charter
of incorporation of said company, and aver that the $25,000
directed to be paid by the said resolution of September 5,
1890, was paid to and received by Alex. K. Rarig out of the
treasury of The Alex. K. Rarig Company, in accordance with
the terms of the resolution, and that this sum constituted
part of the payment by shareholders on their subscriptions
to the capital stock of the company.

It is further averred that the agreement to purchase of
Rarig & Company $25,000 of the capital stock of The Alex. K.
Rarig Company was by the express terms of the contract of
August 16, 1890, an individual liability of the subscribers,
with which The Alex. K. Rarig Company had no concern;
that the action of the stockholders' meeting of September
5, 1890, in authorizing, and of the officers of the company
in making payment of this sum of $25,000 to Alex. K. Rarig
was *ultra vires*, and, as to complainants, creditors of the com-
pany, it was a grossly fraudulent misappropriation of the
funds of the company, which then undertook to act as a cor-
porate body; that, at the time, Alex. K. Rarig was president
of The Alex. K. Rarig Company, and a member of the firm
of Alex. K. Rarig & Company, which firm held $150,000 of
the stock of The Alex. K. Rarig Company, out of a total issue
of $275,000, and was present and participated in the stock-
holders' meeting which authorized said payment, and that
without his vote the illegal action could not have been taken
and carried out.    Therefore complainants charge that this
$25,000 was a trust fund for creditors of The Alex. K. Rarig
Company, and that Alex. K. Rarig & Company who received,
as well as the parties of the second part to the contract of
August 16, 1890, whose debts the funds of The Alex. K.
Rarig Company were used to pay, are personally liable to
complainants for the damage they have sustained by rea-
son of the premises.

Complainants further aver and charge that the charter of The Alex. K. Rarig Company provided that its minimum capital shall be $300,000, and this was held out to complainants as an inducement to contract with it, and as a basis of credit; that the subscribers to the stock of the company, to-wit, the persons whose names are signed to the contract of August 16, 1890, agree in said contract that $300,000 shall be the minimum of the company's capital, and yet they, by their contract, conspired and agreed together that only $275,-000 of capital stock should be issued or subscribed for before the corporation commenced business; that they actually organized the pretended company before the minimum capital was subscribed, thereby falsely representing to the complainants, and the public generally, that the corporation was properly organized, and actually possessed capital stock to the amount of $300,000; that by these proceedings and false representations complainants have been deceived and defrauded; and therefore they charge that it is incumbent on the said subscribers, parties to the contract of August 16, 1890, to make good their representations; that they should be made to pay the amount required to make available this " reserve fund "; that their liability to do this is joint and several, and that all of the tangible assets of the Alexander K. Rarig Company having been exhausted, complainants have no other means of realizing their debts than as herein stated.

The bill prays that it may, in so far as applicable, be treated as a petition in the consolidated cause of the *Southern Railway Supply Co. et als.* v. *Alex. K. Rarig Co. et als.;* that the decree in that cause entered at the September term, 1894, in so far as it attempts to strike the cause from the docket, be set aside; that said cause be reinstated on the docket; that an order be entered therein revoking the order of September 19, 1893, empowering the receiver to sue for the recovery of the $25,000, mentioned in his report of September

19, 1893; "that the payment of the $25,000 to Alex. K. Rarig & Company by The Alex. K. Rarig Company, pursuant to the resolution of September 5, 1890, be rescinded, vacated, and annulled, the stock which was hypothecated therefor be surrendered, and the defendants required to pay to complainants, or to such person for them as the court may designate, the said sum of $25,000, with interest," &c.; that the defendants be required to make good the $25,000 of capital stock required to constitute the minimum of $300,000, or so much thereof as may be needed to satisfy complainants' demands; that a trustee may be substituted in the deed of February 9, 1892, in the stead of J. E. Mullen, resigned, if the court should deem it advisable for the purpose of this suit, &c.; and that general relief be afforded complainants as their case may require.

The question first presented is: Can the complainants' bill be considered as a petition to rehear the decree of September 15, 1894, and if not, can it be considered as a bill of review?

It is the disposition of courts of equity to regard substance rather than form, and so to mould the pleadings as to attain the real justice of the case, and to this end a petition for a rehearing is sometimes treated as a bill of review and *vice versa*. 1 Bar. Chy. Prac., 127, 331-2, and cases cited. Here, however, the bill cannot be treated as a petition to rehear, or as a bill of review. The decree asked to be reheard is a final decree, and the bill falls far short of containing the requisites of a bill of review. When the application for leave to file a bill of review is based upon the allegation of after discovered evidence, it is never a matter of right, but rests in the sound discretion of the court. It must be supported by affidavits, which must set forth, and satisfactorily prove, that the evidence is not only new, but such as the party by the use of reasonable diligence could not have known of; for, if there be any laches

or negligence in this respect, that destroys the right to relief.

The evidence must have been discovered since the decree, and must appear to be material to the case, and such as would probably effect a different result; for immaterial or merely cumulative testimony will not suffice to sustain a bill of review, and if a party should be allowed to go on to a decree without looking for evidence which might be obtained by a proper search, and afterwards, upon finding the evidence, file a bill of review, there would be no end to such bills. 1 Bar. Chy. Pr. 336-7 and cases cited. *Campbell's Exor.* v. *Campbell's Exor.*, 22 Gratt. 674.

There is no suggestion in the bill here of any after discovered evidence, nor was the bill sworn to, nor was the leave of court obtained for filing it, both of which are requisite in reference to a bill of review based upon this ground. Nor are there shown anywhere in the bill errors upon the face of the record in the first suit, nor does the bill aver the necessary parties to make it a bill of review, as the plaintiffs in the creditors' bill in the former consolidated causes are omitted, while, in addition to making the defendants in the former suit defendants here, the subscribers to the stock of The Alex. K. Rarig Company are also made defendants.

The complainants here were parties to the former suit, and participated in the distribution of the assets of The Alex. K. Rarig Company among its creditors in that cause, as shown by the final decree therein of September 15, 1894, wherein appears this clause: "And it appearing   *   *   * that a final settlement has been made with *all the creditors* entitled to the payment out of said funds," (the fund arising from the sale of company's property in that suit) " it is therefore adjudged, &c."   " And, it appearing that the object of this suit has been accomplished, it is ordered that this cause be stricken from the docket."

The deed of assignment to Mullen, trustee, which was

being enforced under the direction of the court in the former suit, describes in detail the property of The Alex. K. Rarig Company, and to make plain that it was intended to convey every vestige of property of every character and description owned by the company or to which it was entitled, this clause in found therein: "All accounts, ledgers, account books, and books containing the records of the business of the said Alex. K. Rarig Company, all notes, bonds, bills, cash in hand, evidences of debts, in whatsoever form, and choses in action of whatever kind, including herein rights of action in favor of the said party of the first part against its stockholders and other debtors    *    *    *    *    *    *   *arising on account of subscriptions to its capital stock or otherwise*    *   *    *    *." The deed also names the creditors of the company intended to be secured, and the amount and character of their respective demands, and in this schedule of creditors, the complainants here, or their assignors, are found. It therefore follows that the complainants were not only parties to the former suit, and participated in the distribution of the funds under the control of the court, but had every opportunity to bring to the attention of the court the matters set up in their bill here, if this, in fact, was not done. One of these items had been brought specially to the attention of the court, and the other was upon the face of the proceedings patent to the complainants, as well as to every other party interested in the assets of The Alex. K. Rarig Company, being administered by the court, yet they interposed no objection to the final decree in that cause, nor do they now allege any excuse or explanation for their failure to litigate then the matter of which they now complain, nor do they claim to have been ignorant of them prior to the entry of the final decree.

Treating the bill then as an original bill, the question remains whether or not the matters sought to be litigated are *res adjudicata.*

It was said by Sir James Wigram, Vice Chancellor, in *Henderson* v. *Henderson*, 3 Hare 115, 25 Eng. Ch. R.: "That where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires the parties to the litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the same subject of litigation, in respect of matter which might have been brought forward as a part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of their case. The plea of *res adjudicata* applies, except in special cases, not only to points upon which the court was actually required, by the parties, to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." See also 7 Rob. Pr. (new), 175 and cases cited.

The doctrine so well and comprehensively stated by Vice Chancellor Wigram is founded upon the familiar maxim in our jurisprudence that no person shall be twice vexed for one and the same cause. The rule has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because, without it, an end could never be put to litigation. It has been sanctioned and approved in numerous cases decided by this court, among which are *S. V. R. R. Co.* v. *Griffith, &c.*, 76 Va. 913; *Wither's Adm'r* v. *Sims*, 80 Va. 660, 661; *McCullough* v. *Dashiell*, 85 Va. 41; *Fishburn* v. *Ferguson*, 85 Va. 321; *Osburn* v. *Throckmorton*, 90 Va. 316; *Beale* v. *Gordon*, 21 S. E. R. 667. See also Wells Res. Adj., section 282; Freeman on Judgments, sections 246, 249 and 256.

It clearly appears from the bill and exhibits that all the matters set up here were, or might and should have been litigated in the original suit. According to the bill, both arose

out of the contract of August 16, 1890, one specially brought
to the attention of the court in the original suit, and the
other necessarily known to the complainants prior to the final
decree in that cause, or could have been known to them by
the exercise of ordinary diligence, and might have been lit-
igated within the scope of the pleadings in the cause, and
been decided therein.   This being the case, the doctrine of
*res adjudicata* applies.

For the foregoing reasons, we are of opinion that there
is no error in the decree of the Circuit Court of Rockbridge
county sustaining the demurrer to the complainants' bill,
and it is therefore affirmed.

*Affirmed.*