# Richmond.

## Southern Railway Co. v. Washington, Alexandria & Mt. Vernon Railway Co.

### March 10, 1904.

1. Injunctions—*Affidavit.*—The affidavit of the president of an incorporated company annexed to a bill for an injunction filed by the company, that affiant is the president of the company, that he has read the bill, and that the allegations thereof of which he has knowledge are true, and that he believes that all other matters stated therein are true, is a sufficient compliance with the requirements of the statute requiring a judge, before awarding an injunction, to be satisfied by affidavit or otherwise of the plaintiff's equity.

2. Res Judicata.—While the doctrine of *res judicata* applies, except in special cases, not only to the points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time, it does not apply to a matter not adjudicated in a former action, and which could not have been brought forward for adjudication upon the pleadings in the cause.

3. Railroads—*Crossings—Board of Public Works—Permission to Cross—Change of Elevation—Res Adjudicata—Injunctions.*—The Board of Public Works had, when this case was determined, exclusive jurisdiction to determine whether one railroad in this State should be permitted to cross another, and the terms upon which it might cross, and its adjudication on that subject was final and conclusive, and the courts had no power to interfere with its order by injunction or otherwise; but the grant simply of permission to cross does not carry with it the right to lower the elevation of the road crossed to its detriment, and where it appears

that such change in the elevation was not passed on by the Board of Public Works, and no adjudication was invited thereon by either party, courts may, on the application of the injured party, grant an injunction to stay the hand of the party threatening the injury until such time as he shall have the right to change the grade determined by the State Corporation Commission, which now alone has jurisdiction of the question.

Appeal from a decree of the Circuit Court of Fairfax county in a suit in chancery wherein appellee was the complainant, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

*Munford, Hunton, Williams & Anderson,* for the appellant.

*Moore & Keith,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

This appeal is from two decrees of the Circuit Court of Fairfax county, entered in the chancery suit therein pending in which the appellee, the Washington, Alexandria and Mt. Vernon Railway Company, is the complainant, and the appellant, the Southern Railway Company, is the defendant. The facts and circumstances out of which the controversy arises are as follows: Appellee owns and operates a line of electric railway from the city of Washington through Alexandria city to Mt. Vernon, in Fairfax county, Virginia, over which a large number of passengers are daily transported. Appellant owns and operates an extensive line of steam railroad, with certain terminal facilities, yards, etc., in the city of Alexandria, and deeming it necessary in the conduct of its business to build a branch line, or spur track, from the termination of its line on Union street, in the city of Alexandria, to the plant of the Alexandria Brick Company, ly-

ing a short distance away from the main line of appellant, which
branch line, or spur track, had necessarily to cross the track
of appellee, the appellant sought an amicable agreement with
the appellee by which this crossing could be made, but, failing
in this, resort was had to the provisions of section 1094 of the
Code, amended by an Act of February 5, 1894. (Acts 1893-'4, p.
186, Pollard's Supplement, p. 111.)   Pursuant to the provisions
of the act, appellant, on the 20th of May, 1901, by its third
vice-president and general manager, submitted to the president
of the appellee company plans, etc., of the proposed crossing, and
thereupon appellee petitioned the Board of Public Works to
"inquire into the necessity of such crossing, and the propriety
of the proposed location, and of all matters pertaining to its
construction and operation."   On June 19, 1901, the Board
of Public Works entered its order, in which is the following:
"And the Board, having heard the evidence and inquired into
the necessity of such crossing, the propriety of the proposed lo-
cation, and all matters pertaining to its construction and opera-
tion, doth order that the Southern Railway Company shall have
the right to construct its works across the railroad of the Wash-
ington, Alexandria and Mt. Vernon Railway Company."

The order then specifies the locality at which the crossing is
to be made in accordance with the plans, specifications, etc.,
submitted for the consideration of the Board, and then directs
how the business of the two roads is to be conducted over the
said crossing, etc.   Upon the making of this order by the Board
of Public Works, appellant procured and tendered to the appel-
lee a crossing frog, which it is claimed, by the appellant, was in
exact accordance with the plans approved by the Board, and
requested appellee to install the same at the expense of appel-
lant, but appellee having failed to do so, appellant served notice
upon it that unless the crossing was installed by a given day ap-
pellant would place the crossing in position; and appellee still
having failed to install the crossing at the end of the day named,

and after its trains had stopped running that night, appellant, in accordance with the notice, and in exact accordance, it claims, with the plans and specifications approved by the Board of Public Works, installed the crossing, reducing the outer rail of appellee's track from an elevation of $4\frac{1}{2}$ inches to $2\frac{1}{2}$ inches, and subsequently reduced, or proposed to reduce, the elevation of the rail to one inch. Thereupon appellee presented its bill to the judge of the Circuit Court of Fairfax county, setting out the above facts, and alleging, *inter alia,* that at the point where appellant crossed its tracks its line is built upon a curve, having a radius of 453 feet, and an elevation of the outer rail of $4\frac{1}{2}$ inches; that appellant well knew that at the point of the proposed crossing the outer rail of appellee's track had theretofore been placed, and was then, at an elevation of $4\frac{1}{2}$ inches, with a view to the safe running of appellee's trains upon and around said curve; that appellee could not safely run its trains with the outer rail of its track at the crossing at one inch elevation, or even at an elevation of $2\frac{1}{2}$ inches, without a guard rail, which had not been furnished by appellant as it should have been, and prayed for an injunction to restrain appellant, its officers, agents, etc., from interfering with the restoration of the elevation of the outer rail of appellee's track at the crossing back to two and one-half inches, or from changing or attempting to change that elevation so as to reduce it to less than $2\frac{1}{2}$ inches, which injunction was awarded.

Appellant demurred to and answered the bill, its answer denying that appellee could not safely operate its trains over the crossing in question with the outer rail of its track at an elevation of $2\frac{1}{2}$ inches, and alleging that it could safely operate them with an elevation of the outer rail of its track at one inch, especially with the use of a proper guard rail, and insisting upon its right to reduce the outer rail to one inch by virtue of the adjudication by the Board of Public Works, conferring upon it the right and authority to construct a branch line, or spur track, across appellee's track.

Upon the hearing of the motion of appellant to dissolve the injunction, heard before the judge of the Circuit Court, on the bill and exhibits therewith, the demurrer and answer thereto and affidavits filed on behalf of both parties, the first decree appealed from was entered August 31, 1901, which denied the motion to strike out certain affidavits, overruled the demurrer, and refused to dissolve the injunction—the learned judge of the Circuit Court being of opinion, that while section 1094 of the Code, as amended, gave to the Board of Public Works complete jurisdiction of all questions relating to railway crossings, including the question of the elevation of the appellee's track and of any change to be made therein, raised by the pleadings in the cause, and that the court would be without jurisdiction to consider that question when it had been properly brought to the attention of the Board, and had been passed upon by it, but that the pleadings and evidence in the cause showed that the question of the elevation to be given to the outer rail of appellee's track, at the crossing in question, had not been brought to the attention of the Board, and had not, therefore been passed on by it, as required by the statute—and continued the injunction that appellant might have an opportunity to proceed in the matter of changing the elevation of the outer rail of appellee's track at the crossing in question, as required by the statute, the decree then providing that when the Board of Public Works, should its jurisdiction be invoked, had passed on the question, and the action of the Board brought to the attention of the court, or the judge thereof in vacation, the injunction would be continued, dissolved, or modified, in accordance with the finding of the Board, etc.

Acquiescing in this decree, appellant on the 30th of September, 1901, served upon appellee a notice of the necessity for the proposed change of the elevation of the outer rail of its track from $2\frac{1}{2}$ inches to one inch, attaching to the notice copies of the plans and specifications for the change, etc.; whereupon,

appellee filed with the Board of Public Works, on October 8, 1901, a petition, praying that the Board would inquire into the necessity of the proposed change in the elevation of its track and all matters pertaining thereto, and that the Board would suspend the work in making the proposed change until it could inquire into the necessity therefor, etc. The Board took jurisdiction of the matters set forth in the petition, ordered all work on the proposed change of appellee's track suspended, and summoned the parties before it for a hearing, which was had on the 7th of November, 1901. At that hearing, notwithstanding the appellant had invoked the jurisdiction of the Board by its notice to appellee of September 30, 1901, under section 1094 of the Code, as amended, upon its motion the Board of Public Works dismissed the petition of appellee on the ground that the Board was without jurisdiction to hear and determine the matters arising on the notice and the petition. In other words, the contention of appellant that by reason of the adjudication by the Board on June 19, 1901, the matters arising on the notice and petition were *res judicata,* whereby the power and authority in the Board to hear and determine these matters had terminated, was sustained. Whereupon appellant filed a supplemental answer to the bill in this cause, setting out the proceedings last mentioned and other facts, and renewed its motion before the judge of the Circuit Court to dissolve the injunction theretofore awarded in the cause.

This motion was heard by the judge of the Circuit Court upon the pleadings and affidavits formerly considered, the supplemental answer of the appellant to the bill, and additional affidavits filed by both litigants, and the second decree appealed from was entered in vacation November 7, 1901, which, so far as pertinent to the issues presented, is as follows:

"(2) The said motion to dissolve the injunction heretofore awarded is overruled, the judge being of the opinion, as stated in decree entered August 31, 1901, that the Board of Public

Works has complete and exclusive jurisdiction to determine the questions at issue as to elevation to be given outer rail of the complainant's track at the crossing mentioned in the proceedings, and that the said injunction should be continued until said Board has determined that question. And when said Board of Public Works has passed upon that question, under notice of defendant mentioned and described in the said supplemental answer of defendant, and the petition thereafter filed by complainant before said Board, or under a new notice to be given by defendant under section 1094, in the event that, if such new notice shall invoke the jurisdiction of said Board under section 1094, as amended, then the decree of this court will be made to conform to the finding of said Board on such question, when it is made to appear to this court. In the event a new notice is given by defendant in pursuance of this decree and under said section 1094, as amended, and the complainant does not invoke the jurisdiction of said Board of Public Works under said section 1094, as amended, the injunction heretofore awarded will be dissolved when this fact is made to appear to this court, or to the judge thereof."

The first assignment of error is the refusal of the judge below to dismiss the bill of appellee for the want of a proper affidavit thereto.

We are of opinion that there is no merit in this contention. The bill is signed in the name of the appellee, by its president, and is verified by his affidavit, in the following words: "That he is the president of the Washington, Alexandria and Mt. Vernon Railway Company; that he has read the foregoing bill of complaint, and that the allegations therein contained, of which he has knowledge, are true, and that all other matters therein stated he believes to be true."

Corporations, as was said by this court in *Fayette L. Co.* v. *L. & N. R. R. Co.,* 93 Va. 274, 24 S. E. 1016, "necessarily act by and through their agents," and it is difficult to perceive how

the requirement that a bill for an injunction shall be verified by affidavit, could have been more fully complied with than is done in this case. The provision of section 3282 of the Code is that "where an affidavit is required in support of any pleading, it shall be sufficient if the affiant swears that he believes it to be true," and the requirement of section 3440 of the Code is merely that the court or judge applied to for an injunction shall not award it unless satisfied by affidavit or otherwise of the plaintiff's equity.

"If made in good faith, and reasonably sufficient, an affidavit should be upheld." 1 Enc. Pl. & Prac. 320, and authorities cited.

The affiant in this case meets every requirement of the statute, if, in fact, he does not go beyond, for in addition to his oath that he had read the allegations of the bill and so far as not known to him personally he believes them to be true, as to such as were known to him, he swears positively that he knows them to be true. The affiant was an officer of the company, and his position was such as necessarily gave him personal knowledge of some of the material allegations of the bill, and was clearly in a position to know whether or not other allegations therein, not within his personal knowledge, were worthy of belief. This was all sufficient to satisfy the judge below of the appellee's equity, and to authorize him to consider the case presented, and to award the injunction prayed for, if of opinion that it should be awarded.

The next contention of appellant is, that the demurrer to the bill should have been sustained and the bill dismissed. This raises the question, whether or not the matters set up in the bill are *res judicata*.

It is true that the bill shows on its face that the ground on which the injunction is asked arose out of the crossing of one railroad by another, pursuant to the adjudication of its right to do so by the Board of Public Works, to which tribunal section

1094 of the Code, as amended, delegates the power to determine whether one railroad in this State shall be permitted to cross another; and it is also true that the adjudication of such a question by the Board is final and conclusive as to any question adjudicated by it, or which it was the duty of either party interested in the proceedings before the Board to have brought forward for adjudication. It is also true that *res judicata* applies, except in special cases, not only to points upon which the court was actually required, by the parties, to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. *Diamond State Iron Co.* v. *Rarig & Co.,* 93 Va. 603, 25 S. E. 894, and authorities cited. But it cannot be applied to a matter not adjudicated in a former action and which could not have been brought forward for adjudication upon the pleadings in the cause; nor to a matter arising after the former adjudication, even in a second suit between the parties to the former, or their privies, if the causes of action are not the same. *C. & O. Ry. Co.* v. *Rison, Trustee,* 99 Va. 180, 37 S. E. 320; *Tate* v. *Bank,* 96, Va. 765, 32 S. E. 476, 7 Rob. Pr. (new) 172.

Therefore, when it is said that *res judicata* applies "to every point which properly belonged to the subject of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time," it is not meant that a judgment concludes parties as to a matter not covered by it and the facts necessary to uphold it. If the real merits of the second action have not been decided in the first, the prior judgment is no bar. *Kelly* v. *Board of Pub. Wks,* 25 Gratt. 760, and authorities cited, and authorities *supra.*

The object of the statute was to provide a tribunal and the necessary appliances for the prompt and final determination of questions and controversies which might grow out of one railroad's seeking to cross another, and consequently provided for

the placing of plans and specifications for such a proposed crossing in the hands of the Board of Public Works, in order to place it in a position to determine the propriety, or the impropriety, of the proposed crossing. It clothes the Board with power to employ experts, hear evidence, and enter orders changing or modfying specifications, but the determination by the Board that one railroad should have the right to cross another, and directing how the crossing was to be established, at whose costs, and the conduct of the business of the respective roads at the crossing, cannot be considered as taking away from the parties the right to litigate a question growing out of an entirely different state of facts, and giving rise to an entirely different controversy. Where the Board of Public Works has taken jurisdiction of a controversy touching the right of one railroad to cross another and adjudicated that question, there is no power in the courts to interfere with its order by injunction, or to otherwise stay the proceedings or prosecution of the work in accordance with the plans and specifications considered by the Board, and this would be so without statutory provision upon the well-established general principle, that where a board or individual is vested with judicial discretion to consider and decide any question, and such board or individual exercises the discretion, its act is final and conclusive; but neither this general principle, nor the statute, can be made to apply to a matter not brought before the tribunal for its adjudication, or in any manner passed on by it.

The bill in this cause, after setting out all of the proceedings before the Board of Public Works when the right of appellant to cross appellee's line was adjudicated, and what was done by appellant in pursuance of that adjudication, then alleges that appellant, not contented with its version of what it had the right to do under the order of the Board, had changed, or proposed to change, the track of appellee so as not only to obstruct the conduct of its business, but to put in peril passengers transported

upon its trains over its line, a matter that the public became at once vitally interested in.    It is made to appear from the facts stated in the bill that the appellant, having received a judgment of the Board, upon one condition of the pleadings and proofs before the Board, and finding the judgment thus obtained, which was general in its terms, broad and comprehensive enough to cover a different state of facts, it is now seeking to use it in a manner and for a purpose to which it was not in the beginning fitted.

We are of opinion that the bill sets out a case for equity jurisdiction, and that the court did not err in overruling the demurrer thereto.

The third and last contention of appellant is, that upon the merits of the case the injunction should have been dissolved and the bill dismissed.    It is claimed that the record establishes (1) that the Board of Public Works has passed upon the elevation of appellee's track at the crossing in question, as one of the matters pertaining to the construction of the said crossing, and (2) that if that was not so it is a matter which the appellee could have raised before the Board, and as to which it is concluded by the order of the Board.

It is admitted, however, that there was no direct adjudication by the Board as to the right of appellant to change the elevation of appellee's track at the crossing, the contention being that the adjudication of the right of appellant to cross the track of appellee at the point designated, carries with it the right and authority to change the elevation of appellee's track at that point.

After reviewing the allegations of the bill and the statements and admissions of the answers thereto, the learned judge below, in his written opinion, made a part of the record, well says:

"From these allegations of the bill and answers, and an examination of the plans and specifications filed therewith, and the affidavits, no doubt is left that the changing of complainant's track by defendant was not passed on by the Board of Public

Works, and no adjudication was invited thereon by either party, and that the necessity or desirability of changing the elevation of the track was only suggested when the defendant installed the crossing frog. If any doubt existed in this respect, it would be removed by an inspection of the notice given by the defendant to complainant on September 30, 1901, in which specific and accurate notice is given complainant of a desire to change complainant's track from $2\frac{1}{2}$ to 1 inch elevation. No such intimation as to the desire of defendant to change the elevation of complainant's track is given under the notice dated the 20th of May, 1901, and under which the proceedings were had before the Board of Public Works, and the order entered by it authorizing the crossing."

It should be added to what was said by the learned judge below, that there was nothing, either in the notice given by appellant (defendant below) to appellee of its desire to cross the latter's track, or in the plans and specifications accompanying that notice, or in any of the proceedings before the Board of Public Works, that indicated to appellee that it was the purpose of appellant to change the elevation of appellee's track at the crossing. Appellee had no reason to apprehend that such a change would be made, but had every reason to believe that the *status quo,* as to the elevation of its track at the crossing, would be maintained. Appellant admits in its answer that it knew that appellee's track at that point had some elevation, though it did not know it had an elevation of four and one-half inches. However, in installing the crossing, appellant did change appellee's track by reducing the elevation of its outer rail from four and one-half to two and one-half inches, and appellee acquiesced in this reduction, but when it became known to it that it was the purpose of appellant to still further reduce that elevation to one inch, it applied to a court of equity, not to stay the prosecution of the work of appellant in establishing the crossing pursuant to the adjudication

by the Board of Public Works, but to stay the hand of appellant in so changing the track of appellee as not only to obstruct the operation of its trains, but to put its passengers in peril, until the question whether or not appellant had the right to make the change was properly adjudicated.    When this matter was brought before the Board for adjudication, although it had been invited by appellant, by its notice to appellee of September 30, 1901, appellant interposed its objection to that adjudication and secured the dismissal of the proceedings.

If the doctrine of estoppel is to be invoked under these circumstances, as appellant seeks to do, it may be well to inquire as to which party it should be applied.    It would seem clear that as the record, including the plans and specifications, made up for and considered by the Board of Public Works, is silent as to any change in the elevation of appellee's track, there is far more reason to contend that the judgment of the Board, even if there was an implied adjudication upon this question, was in favor of the appellee and preserves the *status quo,* with respect to the elevation of its track, than that it was in favor of the appellant, and is a warrant for all the changes it might wish to make in appellee's track.    All of the facts appearing in the record or from the plans, specifications and blue prints, negative the idea that there was any judgment by the Board of Public Works conferring upon appellant the right to change the elevation of appellee's track at all, and certainly none clothing it with authority to continue to change that elevation at will, when, acting under what it conceived to be its authority, the elevation was only changed from four and one-half to two and one-half inches, thus recognizing the necessity for an elevation of appellee's track at the crossing.    It is, therefore, as has already been said, not to interfere with the prosecution of any work by appellant authorized by the Board of Public Works that appellee invokes the protection of its rights in a court of equity, but to prevent an unauthorized interference with its line of railway and a safe

operation of its trains thereon. Appellee, as abundantly appears from the record, occupying its own right of way, where it had been for years before appellant attempted to cross its track, was running a large number of fast trains each day to and from Mt. Vernon, carrying a great number of passengers, and doing this in competition with other agencies, and that it was far more interested in the proper construction and operation of the crossing than the appellant, which built its branch track mainly for the purpose of accommodating the Alexandria Brick Company. The engineer who supervised the construction of appellee's line believed and swore, as did several other experts, equal in capacity to the affiants on the other side, and more numerous, to the danger incident to running trains over appellee's line at the curve should the change of the elevation of the outer rail, as threatened by appellant, be reduced to one inch. Such being the record, we are of opinion that the judge below did not err in refusing to dissolve the injunction, and in requiring that proper proceedings be instituted to have the Board of Public Works adjudicate the question at issue between the parties.

It will be observed that the decree of November 27, 1901, *supra,* merely continues the injunction until the question at issue has been adjudicated by the Board of Public Works, and provides that when the Board shall pass upon that question the order that the court will then make will conform to its adjudication; that is to say, if proper steps are not taken by the appellant to have the question adjudicated by the Board of Public Works, as provided by the statute, the injunction will be perpetuated, and if such proceedings are taken, and an adjudication of the question at issue made by the Board, and that fact brought to the attention of the court, the injunction will be dissolved.

The power and authority theretofore conferred by section 1094, as amended, upon the Board of Public Works to hear and determine all questions pertaining to the crossing of one railroad by another, is by constitutional provision and legislative enact-

ment in pursuance of the Constitution, transferred to and conferred upon the State Corporation Commission, whereby an adjudication of the question at issue between the parties to this cause by that tribunal may be speedily obtained upon a proper proceeding under the statute invoking its jurisdiction, therefore the decrees appealed from will be affirmed.

*Affirmed.*