## CIRCUIT COURT OF WARREN COUNTY

Peggy N. Matlack et al.

v.

Property Owners
of Shenandoah Farms, Inc.

April 26, 1995

Case No. (Law) 94-218

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on April 19, 1995, for trial on the issues of whether a subdivision was subject to the Virginia Property Owners' Association Act, Virginia Code § 55-508 *et seq.* The parties appeared with their counsel. All prefiled exhibits were admitted into evidence, a stipulation of facts was filed, and the case was argued by counsel. Upon consideration whereof, the Court has decided that the subdivision is not subject to the Virginia Property Owners' Association Act.

### I. *Statement of Material Facts*

The parties stipulated to the following facts.

Shenandoah Farms Subdivision (hereinafter "the Subdivision") is a large residential subdivision, and the Plaintiffs are property owners in this Subdivision. The Subdivision contains residential lots and common areas.

The Subdivision has about 2,400 property owners and is located partially in Warren County and partially in Clarke County, Virginia.

The Defendant, the Property Owners of Shenandoah Farms, Inc. (hereinafter referred to as "POSF") is a nonstock, nonprofit corporation incorporated on June 18, 1970, under the provisions of Chapter 2, Title 13.1, of the Code of Virginia.

The declarations for the various sections of the subdivision were recorded after January 1, 1959; prior to July 1, 1991; and prior to July 1, 1989. The covenants in the various declarations vary in content. About eighty percent of the lots are subject to an obligation to pay assessments for maintenance of common areas and other stated purposes. The assessments vary, but none of these covenants provide for annual assessments in excess of $50.00.

None of the covenants in any of the declarations of the various sections of the subdivision mention the POSF or any other property owners' association, and none of the recorded covenants authorize the developer or its assigns to increase the assessments above the maximums stated in the covenants.

The purposes of POSF, as stated in its Articles of Incorporation, as amended, include, continued administration, maintenance, repair, and improvement of the common properties and facilities (Articles of Incorporation, as amended, paragraph (b)(3)); administration of the monies received under the covenants contained in the deed conveying lots to the properties, to be used solely for the maintenance, repair, and improvements of the common properties and facilities but not limited to road and recreational facilities (Articles of Incorporation, as amended, paragraph (b)(4)); operation, management and maintenance for the use and benefit of the property owners the common properties and facilities owned by the corporation or made available to it, including but not limited to, recreational facilities, educational facilities, or facilities for service of any nature, properties acquired from any other source (Articles of Incorporation, as amended, paragraph (b)(5)).

POSF is a voluntary association, and all persons holding a fee simple interest in real property lying within the subdivisions of Shenandoah Farms who make application therefor and who pay annually a membership and activity fee as determined by the Board of Directors shall be members of POSF. Articles of Incorporation, as amended, paragraph 5(c).

By various deeds, the developer of the subdivision conveyed the obligation to maintain the roads and common areas of the subdivision to POSF. By these same deeds of gift, the developer conveyed his authority to collect the assessments stated in the dedications. Plaintiff's Exhibit 1 is a sample of such deeds, and it provides in material part:

> The Grantors [the developer] do further grant and convey unto the Grantee [the property owners' association] all their power and right to enforce the liens placed on most of the lots in

Shenandoah Farms for the purpose of securing an annual assessment against the lot owners to provide sufficient funds to maintain the roads in said Subdivision and to maintain the properties conveyed hereby for the benefit of all the lot owners.

Since 1976, POSF has collected the assessments specified in the various declarations and maintained, to the best of its ability, the roads and common areas of the subdivision.

In May 1994, the Board of Directors of POSF ("the Board") enacted by resolution a one hundred dollar per lot special assessment on each lot in the development pursuant to Va. Code Ann. § 55-514. POSF sought to apply the special assessment for the benefit of the common property of the subdivision. On November 12, 1994, the Board rescinded said special assessment.

The roads and common areas within the subdivision are presently in poor condition and are not properly maintained. POSF presently lacks sufficient funds to properly maintain the roads and common areas within the development. Even if all property owners pay mandated fees, POSF will possess insufficient funds to properly maintain the roads and common areas within the development.

## II. *Conclusions of Law*

The Plaintiffs affirmatively asserted the prior judgment of this Court in the case of *Berg v. POSF*, Warren County Law No. 6649 (1982), as *res judicata* or collateral estoppel in this present action. However, none of the present plaintiffs was a party in the *Berg* case, and none of them were members of POSF at the time that the *Berg* case was decided. Virginia is a mutuality jurisdiction for the purposes of the application of doctrines of res judicata and collateral estoppel and absent two exceptions, which will be discussed later, neither collateral estoppel nor res judicata may be asserted by persons who were not parties to the earlier litigation, upon which the plea of the former judgment is based. The Supreme Court of Virginia observed in *Dual & Associates v. Wells*, 241 Va. 542, 545, 403 S.E.2d 354 (1991):

Collateral estoppel cannot be asserted as a bar by a person who was a stranger to the prior litigation. *Dodson v. Harmon*, 232 Va. 402, 405, 350 S.E.2d 642, 644 (1986). "[A]ccording to the principle of mutuality, to which there are exceptions, a litigant is generally prevented from invoking the preclusive force of a

judgment unless he would have been bound had the prior litigation of the issue reached the opposite result." *Norfolk & Western Ry. Co. v. Bailey Lumber Co.*, 221 Va. 638, 640, 272 S.E.2d 217, 218 (1980).

The Supreme Court of Virginia has created two exceptions to the mutuality requirement: (1) *privies* of parties to the earlier litigation may be bound by the earlier judgment, and (2) a criminal conviction may be asserted as a shield by a civil defendant who is later sued by the person convicted of a crime on a right of action arising from the crime. None of the exceptions apply to this case, so the *Berg* case is not *res judicata* or collateral estoppel in this case.

Moreover, the VPOAA is a different Act than the Virginia Subdivided Land Sales Act. The VPOAA was enacted after this Court's ruling in *Berg v. Property Owners Ass'n,* which is relied upon by the Plaintiffs. The doctrine of *res judicata* applies only to rights of action which have accrued from the cause of action and could have been asserted in the proceeding upon which the plea is based. As the Supreme Court of Virginia noted in *Southern R. Co. v. Wash. & C. R. Co.*, 102 Va. 483, 491, 46 S.E. 784 (1904):

> *[R]es judicata* applies, except in special cases, not only to points upon which the court was actually required, by the parties, to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of the litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. *Diamond State Iron Co. v. Rarig & Co.*, 93 Va. 603, 25 S.E. 894, and authorities cited. But *it cannot be applied to a matter not adjudicated in a former action and which could not have been brought forward for adjudication upon the pleadings in the cause*; nor to a matter arising after the former adjudication, even in a second suit between the parties to the former or their privies, if the causes of action are not the same (cites omitted) (emphasis added).

*See also Bates v. Haley*, 233 Va. 218, 219, 355 S.E.2d 563 (1987) (equitable claim for easement arose from different transaction and could not be asserted in earlier ejectment action at law between the same parties); and

*Wright v. Castles*, 232 Va. 218, 349 S.E.2d 125 (1986) (prior chancery suit for injunction does not bar later suit for monetary damages).

In 1989 the General Assembly enacted the Virginia Property Owners' Association Act, Virginia Code § 55-508 *et seq.* (hereinafter VPOAA). Section 55-508 of that act provides in pertinent part:

> This chapter shall apply to developments subject to a declaration initially recorded after January 1, 1959, and property owners' associations incorporated or otherwise organized after such date. The provisions of this chapter which exclude the applicability of this chapter to developments which impose on the association maintenance or operational responsibilities or on the owners or occupants of lots a mandatory payment of money less than $150 per year per lot as a regular annual assessment shall not be applied retroactively to any development subject to a declaration recorded prior to July 1, 1991. This chapter shall not be construed to affect the validity of any provision of any declaration recorded prior to July 1, 1989, but to the extent the declaration is silent, the provisions of this chapter shall apply. If any one lot in a development is subject to the provisions of this chapter, all lots in the development shall be subject to the provisions of this chapter notwithstanding the fact that such lots would otherwise be excluded from the provisions of this chapter.

The Virginia Property Owners' Association Act does not apply to all developments with common areas and property owners association, and the definitions' section of the Act, § 55-509, must be examined to determine whether the jurisdiction of the Act is triggered. That section provides in pertinent part:

> As used in this chapter, unless the context requires a different meaning:
> "Act" means the Virginia Property Owners' Association Act.
> "Association" means the property owners' association.
> "Common area" means property within a development which is owned, leased or required by the declaration to be maintained or operated by a property owners' association for the use of its members and designated as common area in the declaration.
> "Declaration" means any instrument, however denominated, recorded among the land records of the county or city in which the development or any part thereof is located, that either (i)

imposes on the association maintenance or operational responsibilities for the common area in an amount in excess of $150 per year per lot as a regular annual assessment or (ii) creates the authority in the association to impose on lots, or on the owners or occupants of such lots, or on any other entity any mandatory payment of money in an amount in excess of $150 per year per lot as a regular annual assessment in connection with the provision of maintenance and/or services for the benefit of some or all of the lots, the owners or occupants of the lots, or the common area. "Declaration" includes any amendment or supplement to the instruments described in this definition. "Declaration" shall not include a declaration of a condominium, real estate cooperative, time-share project or campground.

"Development" means real property located within this Commonwealth subject to a declaration which contains both lots, at least some of which are residential or are occupied for recreational purposes, and common areas with respect to which any person, by virtue of ownership of a lot, is a member of an association and is obligated to pay assessments provided for in a declaration.

"Property owners' association" or "association" means an incorporated or unincorporated entity upon which responsibilities are imposed and to which authority is granted in the declaration.

Despite its complexity, the provisions of the Property Owners' Association Act in question are clear and unambiguous. "If a statute is clear and unambiguous, a court will give the statute its plain meaning." *Loudoun County Dept. of Soc. Services v. Etzold*, 245 Va. 80, 425 S.E.2d 800 (1993). Where the statute is clear, the court may not "resort to legislative history and extrinsic facts" to interpret words whose meaning is clear; it must "take the words as written" and give them their plain meaning. *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84 (1985). The Virginia Supreme Court is very reluctant to read requirements or additions into statutes which are not expressed. *See Makarov v. Commonwealth*, 217 Va. 381, 228 S.E.2d 573 (1971). "For this Court to place any limitation on the clear and comprehensive language of the statute, or to create an exception where none exists under the guise of statutory construction, would be to defeat the purpose of the enactment and to engage in judicial legislation." *Town of Crewe v. Marler*, 228 Va. 109, 114, 319 S.E.2d 748 (1984).

The Act is in derogation of the common law in that it imposes obligations on property owners which do not otherwise exist. "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." *C. & O. Ry. v. Kinzer*, 206 Va. 175, 181, 142 S.E.2d 514 (1965). Even remedial statutes are limited to their express terms. *See High Knob Assocs. v. Douglas*, 249 Va. 478 (1995) (Subdivided Land Sales Act, § 55-336 *et seq.*, did not apply to subdivision).

Section 55-508 provides that the Act "shall apply to developments subject to a declaration initially recorded after January 1, 1959, and property owners' associations incorporated or otherwise organized after that such date." The first inquiry is whether the subdivision is a development with common areas for which assessments are provided so that it is potentially subject to the Act, and the answer to that question is yes.

The second inquiry in this case is whether "a declaration initially recorded after January 1, 1959 (§ 55-508) . . . imposes on the association maintenance or operation responsibilities for the common area (§ 55-509) . . . ." Pursuant to § 55-508, since the declarations and property owners' association in question predate July 1, 1991, the "$150 per year per lot as a regular annual assessment" requirement, which otherwise is required to trigger the act's jurisdiction does not apply to this case. *Accord Triangle Pacific v. Westchester Homes*, 26 Va. Cir. 133, 135 (Fairfax 1991) (Act applies even though pre-1989 declaration imposed a maximum assessment of $130.00).

" 'Declaration' means any instrument, *however denominated, recorded among the land records* of the county . . . in which the development or any part thereof is located, that . . . imposes on the association maintenance or operational responsibilities for the common area . . . ." Virginia Code § 55-509. The deeds, like Plaintiffs 4, transferred from the developer to POSF the responsibility "to maintain the roads in said Subdivision," and each such deed, read in conjunction with the earlier deeds of dedication, such as Plaintiff's Exhibit 1, are each an "instrument . . . recorded among the land records . . . that . . . imposes on the association maintenance . . . responsibilities . . . ." Therefore, the declaration requirement of the Act is met.

The third question is whether POSF is a property owners' association as defined by Section 55-509. Under the Act there are two requirements for such an owners' association. First, the association must be "an incorporated or unincorporated entity upon which responsibilities are imposed and

to which authority is granted in the declaration." Virginia Code § 55-509 (definition of "property owners' association"). This requirement is met, because the POSF meets the organizational entity criterion, and the Developer conveyed to it the authority to collect assessments for maintenance. The second requirement of the property owners' association is that "any person, by virtue of ownership of a lot, is a member of an association and obligated to pay assessments provided for in a declaration." Virginia Code § 55-509 (definition of "development"). This second requirement is not met by POSF. None of the various declarations provide that, by virtue of ownership of a lot, the lot owner is a member of the property owners' association. In fact, in this case, the Articles of Incorporation of POSF, section 5, provide that to be a member of the association, the lot owner must make application and pay annually a membership and activity fee. Therefore, POSF is not a property owners' association as defined by the Act, and the Virginia Property Owners' Association Act does not apply to Shenandoah Farms and the POSF.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that Shenandoah Farms is not subject to the Virginia Property Owners' Association Act and that the $100.00 per lot maintenance assessment promulgated in May 1994 is invalid as to any lot whose owner is not a member of the association or required by an applicable covenant to pay maintenance fees and to the extent that the assessment exceeded the $50.00 maximum specified in the declarations.