## Staunton.

### DILLARD v. DILLARD & OTHERS.

#### SEPTEMBER 21, 1899.

1. CHANCERY PLEADING—*Multifariousness.*—No fixed and invariable rule can be laid down by which to determine whether or not a bill is multifarious. If the matters contained in a bill are not wholly distinct and separate, and it is more convenient to litigate and dispose of them in one suit than in two or more, and this can be done without injustice to any one the objection of multifariousness will not prevail.

2. RES JUDICATA.—In order that the defence of *res judicata* may prevail, the judgment or decree in the first suit must have been rendered between the same parties, as in the second, or their privies, and the matters in controversy must have been the same in the former suit as in the latter, and have been determined on the merits. When these requisites concur, the adjudication in the first suit constitutes a bar not only to the points actually decided, but to every point which properly belonged to the particular matter in litigation, and which the parties might have brought forward at the time. All matters offered and received, or which might have been offered to sustain the claim in the prior suit, and all matters of defence which were, or might have been introduced, under the issue, to defeat such claim, are concluded by the judgment or decree in the prior suit.

3. WILLS—*Meaning of " Money "—What Included—Trust Funds—Case in Judgment.*—What is meant by the word " money," as used in a will, must depend upon the particular will, and the context in which the word is used. In the absence of anything in the context to explain or define the sense in which it is used, it embraces cash, bank notes, and money in bank, but does not include choses in action, or securities. It may embrace, however, debts and securities, the whole personal estate, and even the proceeds of realty. In the case in

judgment, the gift was of *money* in the hands of a trustee, and this includes bonds of persons to whom the trust fund has been loaned. This is the ordinary acceptation of the word when so used.

4. TRUSTS AND TRUSTEES—*Discretionary or Personal Trusts—Effect of Death of One of the Trustees.*—If an uncontrollable discretion be vested in two or more trustees jointly, without words of survivorship, the death of one of the trustees terminates the discretion, and it cannot be exercised by the survivor or survivors. *Sulphur Mines Co.* v. *Thompson,* 93 Va. 293, distinguished.

5. CHANCERY JURISDICTION OVER DISCRETIONARY TRUSTS—*Sec. 3419 of Code.*—A court of equity has no jurisdiction to interfere with a trustee in the exercise of a discretionary trust, or one of personal confidence, so long as he acts in good faith. It can neither execute it itself, nor appoint some one else to do it. Section 3419 of the Code as amended (Acts 1889-'90, p. 40; Acts 1897-'8, p. 687) has no application to a trust of this character.

6. TRUSTS AND TRUSTEES—*Discretionary Trusts—Termination of Discretion—Alternate Trusts.*—If the discretionary part of a trust becomes extinct, the trust becomes absolute for the alternate beneficiary, if any, and it is the duty of the trustee to proceed within a reasonable time to carry into effect the alternate provision.

Appeal from a decree of the Circuit Court of Nelson county, pronounced March 3, 1898, in a suit in chancery, wherein the appellee, James S. Dillard and others, were the complainants, and the appellant and others were the defendants—one of the objects of the suit being a construction of the will of Narcissa E. Dillard, deceased.

*Reversed.*

The opinion states the case.

*Caskie & Coleman,* for the appellant.

*J. Thompson Brown* and *A. B. Coleman,* for the appellees.

RIELY, J., delivered the opinion of the court.

There was a demurrer to the bill for multifariousness. It was overruled by the court, and this is assigned as error.

It is a general rule of chancery pleading that a party will not be permitted to embrace in the same bill distinct and separate causes of action, but, to come within the rule, the causes must be wholly distinct, and each cause, as stated, must be sufficient to sustain a bill. The courts, however, have found it impracticable to lay down any fixed rule applicable to all cases, but where the matters in controversy are not absolutely independent of each other, they consider what is just and convenient in the particular case; and if it will be more convenient to litigate and dispose of the matter in controversy in one suit, and this can be done without injustice to any party, the objection of multifariousness will not prevail. Story's Eq. Pl., sec. 530; *Segar* v. *Parrish,* 20 Gratt. 672; *Hill's Adm'r* v. *Hill,* 79 Va. 592; *School Board* v. *Farish,* 92 Va. 156; *Spooner* v. *Hilbish,* 92 Va. 333; and *Staude* v. *Keck,* 92 Va. 544.

In the case at bar, the true construction of the will of Narcissa E. Dillard, deceased, is the primary matter in controversy. It is the pivot, as it were, around which all the matters in issue revolve, and upon which all the relief sought depends. All the complainants are immediately interested in the various clauses of the will to be construed, and in each and all of the questions involved, and the appellant is likewise concerned in them all, and will be affected by their decision. It is, therefore, manifestly both proper and convenient to litigate in the same suit the several matters in controversy. It cannot be perceived how the appellant could be prejudiced by this mode of proceeding.

The defence of *res judicata* is likewise untenable. It is a just maxim of the law that no person shall be twice vexed for one and the same cause of action, but the justice of the maxim requires that the judgment or decree in a former suit, which is relied on as a bar to the subsequent suit, must have been rendered upon the merits of the controversy. The adjudication, when so made, it may be added, constitutes a bar not only to the points actually decided, but to every point which properly belonged to

the particular matter in litigation, and which the parties might have brought forward at the time, for a party is required to present the whole of his case and not omit a part, which, by the exercise of reasonable diligence, he might have brought forward at the time. All those matters which were offered and received, or which might have been offered to sustain the particular claim or demand litigated in the prior suit, and all those matters of defence, which were presented or might have been introduced under the issue to defeat the claim or demand, are concluded by the judgment or decree in the former suit. It must, however, have been rendered in a proceeding between the same parties or their privies, and the matter in controversy must have been the same in the former suit as in the latter, and been determined on the merits. *Chrisman* v. *Harman*, 29 Gratt. 494; *Diamond State Iron Co.* v. *Rarig*, 93 Va. 595; and *Miller* v. *Wills*, 95 Va. 354.

The decree relied upon as a bar to the present suit was not rendered upon the merits of the matters now in controversy. The former suit was brought by John T. Dillard mainly for the construction of the will of his mother, the settlement of the accounts of her executor, and the recovery of the interest he claimed under her will. He was sole plaintiff and made, among other persons, the complainants and the executor defendants. The court decided that the plaintiff took nothing under the will of the decedent, and upon that ground alone dismissed his bill. *Dillard* v. *Dillard's Ex'or et als.*, 21 S. E. 669. This was clearly not a decision on the merits of the matters now in issue. The complainants in the present suit do not claim in the same right as the plaintiff in the former suit. All claim under the same will, but the rights asserted by them are separate, distinct, and antagonistic to those asserted by him. In no sense were they in privity with him. A decision that he was without any right to maintain the suit did not determine their right to sue, and was not an adjudication in any manner of the matters now

put in issue. And no such case was made by the pleadings or proof as warranted a decree between them and the appellant as co-defendants.

This brings us to the merits of this controversy. The testatrix, in the latter part of the first clause of her will, devises and bequeaths as follows: "And from and immediately after the death of my said husband, I hereby give and devise the tract of land * * * * * and all the money and other personal property in this clause given to my said trustees for the sole use and benefit of my said husband, that may be on hand and unexpended and unappropriated, to my son, William S. Dillard, and his heirs and assigns forever."

The particular matter to be decided is what William S. Dillard took under the phrase "all the money" in the above bequest. In what sense did the testatrix use the word "money," and what is embraced by it? Did she mean money, in its natural and ordinary sense, or did she intend to include also debts and securities?

It seems to be well settled that a gift in a will of "money," with nothing in the context to explain or define the sense in which it is used, includes cash, bank notes, and money in bank, but does not include choses in action or securities. The word, however, is often popularly used as synonymous with personal estate, and has been construed to include, besides money literally so called, not only debts and securities, but the whole personal estate, and even the proceeds of realty. 1 Jarman on Wills, 724-32; *Dabney* v. *Cottrell's Adm'x*, 9 Gratt. 572; and *In re Miller*, 17 Amer. Rep. 422. What is meant by the word "money" must in each case depend upon the will and its context.

In order to ascertain what money the testatrix referred to, and what she meant by the use of the word, it is necessary to look to the prior part of the clause making the gift to trustees for the benefit of her husband. After giving to them the tract

of land on which she resided, and certain personal property, she then also gives to them " all the money that may be in the hands of my said husband as my trustee at the time of my decease," and directs that they permit him to make such use and disposition of the rents and profits of the land, and " of the ( money and other personal property, as to him may seem right and proper, without stint or accountability."

It appears from the record that her husband held certain estate and funds in trust for her, and had lent a part thereof in the year 1858 to Thomas J. Massie, for which he took the bond of Massie, with personal security, payable to himself as trustee for his wife, and subsequently reduced the same to judgment.

In construing a will of personal property, the terms used are to be construed according to the ordinary acceptation of language in the transactions of mankind. There is generally a wide difference in a person's meaning, when, in speaking of his "money," he is referring to money in his own possession or under his immediate control, and when he is speaking of " money " belonging to him, which is in the possession or under the control of another person. In the one case, he knows of what his property consists, and knows what part of it is in ready money, and what part is invested. Therefore, when he is referring to his " money " in his own possession, he usually means his ready money; that is, the money which he has actually in hand, in his dwelling, or on deposit in bank. In the other case, when he is referring to his " money " in the possession of another person, as in the case of money for his use and benefit in the hands of a trustee, whose duty it is to invest or lend out the money, he generally means the fund so held in trust. In the latter case, he would naturally presume that the trustee had done his duty and lent out or invested the money, but would not be likely to know to whom it was lent, or how it was invested. It is a common expression of a cestui que trust to speak of his or her money in the hands of the trustee, referring not merely to the coin or currency that

may happen to be in the hands of the trustee, but meaning the trust fund or estate in whatever shape it may be, or however invested. It was in this sense, we think, in which the testatrix used the phrase " all the money that may be in the hands of my said husband as trustee for me at my decease," and that consequently the gift over to William S. Dillard includes the " Massie " debt.

By the fifth clause of her will the testatrix gave to her sons, William S. Dillard and Stephen T. Dillard, and her son-in-law, John C. Mundy, in trust, all her right, title and interest in and to the tract of land on which her son, John T. Dillard, resided, and also the sum of $2,000 " to be held and managed by the said trustees at their own absolute discretion: they may permit my son, John T. Dillard, to occupy and enjoy the said tract of land, and to take to himself the profit thereof, and may pay to him the whole or any part of the principal or interest of the said sum of money, but shall not be compelled, or be liable to be compelled to do so, either at law or in equity. * * * * The said trustees are also authorized, if they think proper to do so (but they shall not be compelled, or be liable to be compelled to do so, either at law or in equity, being hereby vested with an absolute and uncontrollable discretion), to give the whole or any part of the money, or of the land aforesaid, to my son, John T. Dillard, in fee, for life, or for a term of years, subject to such conditions, limitations, and restrictions as they may think proper to annex to such gift, and I desire and hereby direct that the said trustees, whenever they may think it proper so to do, shall sell, upon such terms as they may deem best, the whole of the real and personal property belonging to said trust fund, and remaining unappropriated and still under their control, and divide the proceeds of such sale, together with any moneys belonging to said trust fund, into three equal parts," giving one of said parts for the benefit of Elizabeth H. Dillard, another part for the benefit of Cynthia J. Mundy, and the

remaining part for the benefit of the children of Terisha W. Dillard.

Stephen T. Dillard, one of the trustees, died, without the land or money, or any part thereof, having been given by them to John T. Dillard under the discretionary power conferred upon them by the trust. Two questions, therefore, arise and are presented by the pleadings in the case: First, Can the discretionary power be now exercised in favor of John T. Dillard by the surviving trustees; and second, if not, what right, if any, have the complainants to require the land to be sold, and Cynthia J. Mundy and the executor of Elizabeth H. Dillard, deceased, to recover one third each of the proceeds of sale and of the moneyed legacy?

It is manifest that the trust created by the fifth clause of the will is, as respects John T. Dillard, discretionary, and peculiarly one of personal confidence. It imposed on the trustees a most delicate duty. The testatrix, for reasons which do not appear on the face of the will, thereby placed this son with respect to any interest in her estate in the uncontrollable power of the trustees. For the discharge of this trust, she selected two of her sons, and a son-in-law. In all the other trusts created by the will, their execution was entrusted to the two sons. The power, as respects John T. Dillard, being conferred on the three trustees by name, without words of survivorship, and being one of personal confidence, it could only be conjointly exercised by all three of them, and not by a less number. The authority being joint is determined by the death of one of them. Hill on Trustees, mar. pp. 211, 227, 489; 2 Perry on Trusts, secs. 496, 497, and 499; *Cole* v. *Wade*, 16 Vesey 27; *Walter* v. *Maunde*, 19 Vesey 424; and *Brown* v. *Hobson*, 3 A. K. Marshall 380.

If the law were otherwise, then, upon the death of one of the trustees, the two survivors could execute the power, and upon the death of one of them, the sole survivor could do so, and might dispose of the property in a way which the other two trustees

in their lifetime always opposed and prevented, and thereby frustrate the very object of the testator in entrusting its disposition to the joint judgment of all three of them, and defeat his testamentary intent. The question here is not the same that was decided in *Sulphur Mines Co.* v. *Thompson*, 93 Va. 293, but very different. There the question was whether a power coupled with an interest, unexecuted in the lifetime of the donor, was revoked by his death. The question here is whether a discretionary power jointly confided to three trustees by name, though coupled with an interest, can be executed by the survivors after the death of one of the trustees or donees of the power.

Section 3419 of the Code, as amended by Acts 1889-'90, p. 41, and by Acts 1897-'98, p. 687, was relied upon by counsel as authority for the execution of the power by the surviving trustees. These statutes could never have been intended to refer to a trust involving discretion or personal confidence, but only to those trusts which a court may execute. Where the trust is discretionary, or one of personal confidence, a court of equity has no jurisdiction to interfere with its exercise by the trustee so long as he acts in good faith, and cannot execute it, nor can any trustee appointed by it in the place of him, in whom the discretion and confidence was reposed, do so. Hill on Trustees, mar. pp. 486, 488, 495; 2 Perry on Trusts, secs. 499, 510, 511; *Cowies* v. *Brown*, 4 Call 477; *Cochrane* v. *Paris*, 11 Gratt. 348; and *Read* v. *Patterson*, 6 Amer. St. Rep. 877, and note thereto.

The power to give the property, or any part of it, to John T. Dillard having become extinct by the death of Stephen T. Dillard, the trust became absolute for the alternate beneficiaries. The testatrix expressly directs that the trustees, " whenever they may think it proper so to do, shall sell, upon such terms as they may deem best, the whole of the real and personal property belonging to said trust fund, and remaining unappropriated and still under their control, and divide the proceeds of such sale,

together with any moneys belonging to said trust fund," among the persons therein named and specified. The discretionary power not having been exercised in favor of John T. Dillard before the death of Stephen T. Dillard, and consequently not being capable of now being exercised, there remains no discretion in the trustees as to the disposition of the trust subject. The beneficiaries who are to take it are named, and the manner in which they are to take it is prescribed. The only discretion allowed the trustees, if the power with respect to John T. Dillard was not exercised in his favor, was as to the time when and the terms upon which the sale of the property should be made and the distribution take place, but this discretion being confided to the three trustees jointly, like that conferred upon them with respect to John T. Dillard, it ceased with the death of Stephen T. Dillard, and the surviving trustees were thereafter without authority to postpone the sale and the division of the trust subject. Good faith required that this duty be performed within a reasonable time. It could not be indefinitely deferred. Stephen T. Dillard died April 10, 1890, and this suit was brought to September Rules, 1893. The court properly decreed that the land be sold, in order that the proceeds of sale and the rest of the trust subject might be divided among the alternate beneficiaries.

The decree appealed from, however, must be reversed for the erroneous construction of the first clause of the will, and the cause remanded to be further proceeded with in accordance with the views herein expressed.

*Reversed.*