BARNABUS W. BAKER

V.

JARED LINSLY, JR., ET AL.

Record No. 870526

April 21, 1989

Present: All the Justices

*Joel P. Crowe (Ellen H. Gray; Babb, Oast, Hook and Crowe,* on briefs), for appellant.

*James C. Howell (Willcox & Savage, P.C.,* on brief), for appellee Jared Linsly.

W. Scott Street, III (Stephen E. Baril; Williams, Mullen, Christian & Dobbins, P.C., on brief), for appellee American Cancer Society.

No briefs or arguments for appellees Elizabeth Branch, Mary Blaylock, Cecelia Melton, Lila Morris, Helen Dawson, Helen Banman, June Vollmer, Loftus Lindsey, Mary Lindsey, Robert Carter, Plaza Rescue Squad, Virginia Johnston, Marion Cinex, Willima McLaughlin, St. Aidan's Episcopal Church, SPCA of Virginia Beach, Virginia, Carolyn Harrell and Kathy Dingerall.

RUSSELL, J., delivered the opinion of the Court.

This appeal involves the construction of a will. Specifically, it requires us to determine whether the testamentary language was ambiguous, justifying the admission of extrinsic evidence to aid the court in determining the intent of the testatrix.

Alberta Virginia Baker, a resident of Virginia Beach, died on November 27, 1985. She was unmarried and childless. Aware that she was terminally ill, she had a will prepared by her attorney shortly before her death, which was thereafter admitted to probate. Its pertinent provisions are as follows:

## Article I

[A direction to the executor to pay all just unsecured debts and expenses of administration as soon as possible after death.

## Article II

I hereby direct my Executor to sell my home at 1347 Little Neck Road, Virginia Beach, Virginia, and the net proceeds of such sale to be applied to the payment of my just debts, including the costs of administration and to the extent net proceeds remain, to be used to satisfy the specific cash bequests set forth below and the remainder, if any, to be passed under the residue of my estate.

## Article III

[A series of bequests of specific items of personal property and cash legacies to 22 named individuals and organizations. Some beneficiaries were to receive cash only; some, tangibles only; and others, a combination of cash and tangible items. The cash legacies came to a total of $315,000.00. One of these clauses, containing the largest single legacy, gives to Barnabus William Baker "my daddy's handmade silver with CPB initials engraved and Twenty Five Thousand ($25,000) dollars." The article ends with the following paragraphs:]

It is my desire and intent that the specific bequests made above be carried out by my Executor, whose decision and identification of the individual named articles to the named beneficiary shall be conclusive and final, and if there isn't sufficient monies to make all the above bequests, then all the money bequests shall be proportionately reduced.

All the rest and residue of my property, both real and personal, wherever situate and however held, including lapses, legacies and devises, I devise and bequeath to BARNABUS WILLIAM BAKER.

The will named Jared Linsly, Jr., as executor. After he qualified, the executor instituted this proceeding in the circuit court by filing a petition for aid and direction and for declaratory judg-

ment. The executor took the position that the entire estate should be devoted to the satisfaction of the cash legacies in Article III, but represented to the court that Barnabus Baker, as residuary legatee, was contending that the cash legacies in Article III were to be funded solely from the proceeds of the sale of Miss Baker's home, pursuant to Article II.

The executor further alleged that the sale of the home would yield proceeds between $120,000 and $150,000, but that the personal estate contained money market funds totalling approximately $210,000. Thus, if the executor's interpretation were correct, there would be nearly enough in the estate after payment of debts and expenses to pay the Article III legacies in full, but there would be little, if any, money to pass under the residuary clause. If Mr. Baker's view prevailed, the Article III legacies would abate pro-rata to less than half the sums mentioned in the will, and the $210,000 in money market funds would pass to Mr. Baker under the residuary clause.

The case came to trial in November 1986. The chancellor ruled that the will was ambiguous and heard extrinsic evidence with respect to Miss Baker's intent. At the conclusion of trial, the court held that the testatrix intended that her entire estate, not merely the proceeds of sale of her home, was to be used to pay the Article III legacies. We awarded Barnabus Baker an appeal from the final decree which carried that holding into effect. Mr. Baker argues on appeal that the will is clear and unambiguous, and that the court erred in admitting extrinsic evidence. He points out that Article II designates a fund, the proceeds of sale of the house, which is expressly devoted "to satisfy the specific cash bequests set forth below," and that no alternative means of paying the legacies is provided. He also points to the proviso in Article III: "if there isn't sufficient monies to make all the above bequests, then all the money bequests shall be proportionately reduced" as demonstrative of the testatrix' intent. "Monies," he contends, is merely the plural of "money," and the only source of ready money provided by the will is the proceeds of sale of the home under Article II. Thus, he contends, it is apparent from the face of the will that the testatrix intended that the legacies abate if the proceeds of sale of the home were insufficient to pay them in full.

The will is indeed subject to the foregoing interpretation, but that is not the only tenable view. The term "monies" is not

necessarily limited to cash. In *Dillard* v. *Dillard*, 97 Va. 434, 438, 34 S.E. 60, 62 (1899), we said:

> It seems to be well settled that a gift in a will of "money," with nothing in the context to explain or define the sense in which it is used, includes cash, bank notes, and money in bank, but does not include choses in action or securities. The word, however, is often popularly used as synonymous with personal estate, and has been construed to include, besides money literally so called, not only debts and securities, but the whole personal estate, and even the proceeds of realty. What is meant by the word "money" must in each case depend upon the will and its context.

(Citations omitted.)

It is equally well settled that a court construing a will must, if it can, determine the testator's intent from the language of the will itself. If in doubt, the court must place itself in the position of the testator at the time the will was drafted, and must consider the surrounding facts and circumstances as they then appeared to the testator. *See Collins* v. *Hartford Acci., Etc., Co.*, 178 Va. 501, 511-512, 17 S.E.2d 413, 417 (1941); 2 Harrison on Wills and Administration § 258 (G. Smith 3rd ed. 1986). Such a consideration is aided by the presumption that a testator, when drafting his will, knows what he owns and what he owes. *Board of Missions* v. *Brotherton*, 178 Va. 155, 162, 16 S.E.2d 363, 366 (1941).

Relying on that presumption, the executor points out that Miss Baker's dominant intent was clearly expressed in Article III: "It is my desire and intent that the specific bequests made above be carried out . . . ." Presuming that she knew that the proceeds of sale of her home would serve to pay less than 50% of the stated amounts of the legacies, the only way of effectuating her intent would be to devote her money market funds also to their payment. That course, the executor suggests, would result in paying the legacies in full, or nearly so, as she clearly intended. Therefore, the executor argues, Miss Baker must have used the word "monies" in the broader sense, including her money market funds as well as the proceeds of sale of her home as a combined source for the payment of the legacies. Only if that combined source were insufficient would the legacies abate.

■ We agree with the executor. It is true that his analysis depends upon circumstances outside the words of the will, but the will is ambiguous and the ambiguity, although latent, amounts to an "equivocation." Depending upon the definition assigned to the word "monies," either construction of the will is tenable. We have defined "ambiguity" as "the condition of admitting of two or more meanings, of being understood in more than one way . . . ." *Berry* v. *Klinger*, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983).

■ It follows that the chancellor correctly admitted evidence extrinsic to the will to aid in determining Miss Baker's intent. In *Baliles* v. *Miller*, 231 Va. 48, 57-58, 340 S.E.2d 805, 810-11 (1986), we expressly adopted the rules set forth by Professor Graves in 1893:

(1) If the language of a will is plain and unambiguous, extrinsic evidence is never admissible to contradict or alter its meaning.

(2) Extrinsic evidence of facts and circumstances, such as "the state of [the testator's] family and property; his relations to persons and things; his opinions and beliefs; his hopes and fears; his habits of thought and of language" are "always admissible in aid of the interpretation of the will — *i.e.*, as explanatory of the meaning of the words as used by the testator"; and "the same doctrines should apply to all ambiguities, whether patent or latent, admitting evidence of the facts and circumstances in all cases, and of declarations of intention in the one case of equivocation."

(3) An "equivocation" exists "where the words in the will describe well, but equally well, two or more persons, or two or more things" and "all extrinsic statements by a testator as to his actual testamentary intentions — *i.e.*, as to what he has done, or designs to do, by his will, or as to the meaning of its words as used by him" are admissible to show which person or thing he intended and, thus, to resolve the equivocation.

(Citations omitted.)

■ The extrinsic evidence heard by the chancellor gave overwhelming support to his finding. Several of the witnesses who testified to Miss Baker's statements were also legatees, and could have been affected by bias. Her attorney, who drafted the will,

however, had no personal interest in the outcome. He testified that her last will revoked and replaced an earlier will and substantially increased the legacies contained in the earlier will. He further testified that Miss Baker was well aware that the proceeds of sale of the home would be far too small to pay the increased legacies, and that he discussed with her "where was this money coming from." She responded that the increased gifts were made possible by "an appreciable increase in the values of her mutual funds and other securities." He stated that she had no intention to restrict the legacies to the proceeds of sale of the real estate.

For the foregoing reasons, the decree will be

*Affirmed.*