## ANNE L. DAVIS GILLESPIE, ET AL.

### V.

## C. LEE DAVIS

Record No. 910216

November 8, 1991

Present: All the Justices

*Lois C. Hardy* for appellants.

*R. Norris Bloxom (Howard C. Wessells, II*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In this case involving the construction of a will, the main issue on appeal is whether the trial court correctly decided that the testator intended to give a business associate the right to purchase from the testator's devisees a parcel of land for its fair market value.

William J. Gillespie, the testator, was a resident of Wallops Island in Accomack County. He was a civil engineer and a successful contractor engaged for many years in the manufacture of ready-mix concrete and concrete abutments. The business was conducted on the property in question, one of eight parcels of realty owned by the testator; it was "a fenced-in compound of ap-

proximately four-and-a-half acres" located at a highway intersection near Chincoteague.

Appellee C. Lee Davis, a friend of the testator's for "approximately thirty years," became the testator's business associate in 1980. Several years later, the testator decided to retire from the business, which Davis continued to operate at the site. Davis leased the property from the testator who maintained an office on the premises. During the next few years, the testator gave Davis "invaluable" assistance in the operation of the business, refusing "many times" Davis's offer of compensation. According to Davis, "it was almost like he was a father to me."

In May 1988, the testator executed the will in question, a three-page typewritten document. He died on February 3, 1989, and the will was duly probated. The appellants, Anne L. Davis Gillespie, Martha Louise Storer, and Caroline Denmon Wyly are the devisees under the will. Gillespie, also known as Anne L. Davis, is the testator's widow and qualified as executrix of the estate. Storer and Wyly are the testator's stepdaughters.

This controversy was generated by the third and sixth clauses of the will. They provide as follows, complete with spelling errors:

"Third, I give and devise all of my realestate to Mrs. H. E. Storer, Mrs. C. J. Wyly, Jr., and Mrs. Anne L. Davis. They are to share equally and the disposal will be in their hands.

. . . .

"*Sixth* - It is my desire that Lee Davis, the present renter of the shop area, (fenced-in compound) be allowed to purchase that area and the equipment I own in that area for the fair market value. The equipment includes one D-7 Catepillar bulldozer, John Deere backhoe, Lorain 25 - ton crane with 100' of boom, Mack tractor and 33-ton capacity LaCrosse trailer, acetelyne cutting touch with bottles and Cart, Dewalt radial saw (in carpenter shop) and a 4" electric threading machine. The fixed equipment includes a cement silo, aggregate bins, shop building, quonset huts, carpentry shop and sheds. In the event Lee Davis does not desire to buy the moving equipment it shall be sold at auction and the proceeds divided equally among the before-mentioned heirs."

In August 1990, Mr. Davis instituted the present proceeding by a bill for declaratory judgment in equity, naming the devisees de-

fendants. Referring to the sixth clause of the will, Davis asserted that he desired to purchase the realty in question from the devisees for what he alleged was the fair market value of $189,500, but that the devisees had "failed and refused to convey same to him pursuant to the provisions of the will." Davis asked the trial court to interpret the will, to adjudicate whether he has the right to purchase the realty, and to establish its fair market value.

Responding by answer and cross-bill, the devisees asserted that the proper interpretation of the will is that the testator gave all his real property, including the parcel in question, to them "to do with as they saw fit." They asserted that the language in the sixth clause "is merely precatory in nature and expresses a wish or request of the testator, not a positive command or directive necessary to establish rights of [Davis] in or to the subject real property; and that [Davis] has no right to purchase the subject property under the provisions of said Last Will and Testament."

Additionally, the devisees alleged that the property's fair market value was $300,000. The devisees asked the trial court to interpret the will in a manner which would sustain their assertions.

Following an October 1990 ore tenus hearing, during which the chancellor considered extrinsic evidence over the devisees' objection, the trial court ruled in favor of Davis. The court decided that the testator's intent was to grant Davis the right to purchase the parcel in question from the devisees and that its fair market value was $197,750. The court ordered the devisees to convey the property to Davis for that amount. From a November 1990 final decree incorporating those rulings, we awarded the devisees this appeal.

■ "The cardinal principle of will construction is that the intention of the testator controls; the problem is to ascertain it." *Clark* v. *Strother*, 238 Va. 533, 539, 385 S.E.2d 578, 581 (1989). A court construing a will must determine the testator's intent from the language of the document, if possible. *Baker* v. *Linsly*, 237 Va. 581, 585, 379 S.E.2d 327, 329 (1989).

■ Extrinsic evidence may never be used in aid of the interpretation of a will if the language is clear and unambiguous. *Coffman's Adm'r* v. *Coffman*, 131 Va. 456, 461, 109 S.E. 454, 456 (1921). But there are various ways of expressing the same thought and there are many different shades of meaning which a group of words may convey; individuals differ in their knowledge of grammar and in their manner of expression. These factors often

give rise to cases where the language of a will is ambiguous, susceptible to more than one interpretation. In such cases, two classes of extrinsic evidence may be admitted: (1) so-called "facts and circumstances" evidence and (2) so-called "declarations of intention" evidence. *Id.* at 461-64, 109 S.E. at 456-57.

The first class involves evidence about the testator, the testator's family and property; the claimants under the will and their relationship to the testator; the testator's hopes and fears; the testator's habits of thought and language; and similar matters. The second class is confined to cases of "equivocation," that is, where the words in the will describe equally well two or more persons or two or more things. Under this narrow category, extrinsic statements by the testator of his actual testamentary intentions, that is, what he has done or designs to do by the will, are admissible. *Id.*, 109 S.E. at 456-58. *Accord Baker*, 237 Va. at 586, 379 S.E.2d at 330; *Baliles* v. *Miller*, 231 Va. 48, 57-58, 340 S.E.2d 805, 810-11 (1986).

Contrary to the devisees' contention, we conclude, as did the trial court, that the third and sixth clauses create an ambiguity in the will and that this was a proper case for the use of extrinsic evidence. In the first sentence of the third clause, the testator gives "all of" his real estate to the devisees, but states in the second sentence that the "disposal" of it "will be in their hands." The only other will reference to his real property is contained in the sixth clause in which he expresses the "desire" that Davis be permitted to purchase the parcel in question. This, of course, deals with the disposition of realty and could reasonably be construed to refer back to the "disposal" reference in the third clause, giving Davis a right to purchase from the devisees. But the provisions could also reasonably be construed to mean that the realty in the hands of the devisees was to be unaffected and unencumbered by the "desire" expressed in the sixth clause. If this was the testator's intention, however, the second sentence of the third clause was unnecessary; the gift to the devisees would have been unrestricted by use of the first sentence alone.

While this is a case where the use of extrinsic evidence was warranted, this is not a case of equivocation; the parties and the property are clearly designated. This is a case, however, where evidence of facts and circumstances concerning the testator properly were admitted. And this evidence is overwhelming that the

testator intended for Davis to have the right to purchase the shop area for its fair market value.

The widow testified that the testator made a draft of the will in his own handwriting and that she typed it as he stood beside her. During this process, there was no discussion about the disposition of the "concrete plant property" except that the handwritten draft provided that the property could be purchased for $400,000; the testator directed her to type that it could be bought for "the fair market value."

The evidence was undisputed, indeed corroborated by the widow, that Davis and the testator had a close business and personal relationship for at least nine years prior to his death. According to the testimony, the testator unselfishly assisted Davis in operating the business, giving advice and financial assistance when necessary. Davis was operating on a monthly lease and attempted to obtain a long-term lease but the testator always refused. The testator told Davis that if he decided to sell the property, Davis could purchase it or, at his death, could buy it from the estate.

Significantly, the widow testified that the testator, in discussing the continuation of the concrete business, said that he "wanted Lee [Davis] to have it, but he's going to have to pay for it." The widow testified there was "no question" in her mind about Davis's right to purchase the property but "he was going to have to pay [me] and the daughters the fair market value."

Confronted with this abundant evidence of the testator's intention that Davis have the right to purchase the subject property from the devisees, they nevertheless contend that the "desire" and "be allowed" language in the sixth clause are mere precatory words of entreaty, request, wish, or recommendation as distinguished from direct or imperative terms. They point out that throughout other clauses of the will, the testator expressed "in clear and concise terms the disposition of his estate" by using the words "I direct" or "I give and devise," or "I give." They say that the language in the sixth clause "is a wish, a personal charge to his heirs, and does not establish a right in Davis to the shop area." We do not agree.

■ Precatory words are generally defined as terms expressing direction, recommendation, desire, wish, or request. Such words are usually deemed mandatory when addressed to an executor, but when directed to devisees generally are not considered imperative unless it appears that they were meant to create a legal obligation.

*Carson* v. *Simmons*, 198 Va. 854, 859, 96 S.E.2d 800, 804 (1957). We have held that "words of request or expectation are presumably indicative of nothing more, unless the context, or the circumstances surrounding the testator when he made the will, show that he really meant to leave the devisee no option in the matter." *Smith* v. *Trustees of the Baptist Orphanage*, 194 Va. 901, 905, 75 S.E.2d 491, 494 (1953). As we have said already, the circumstances surrounding this testator when he made the will show that he really meant to leave these devisees no option but to sell the shop area to Davis for its fair market value. It follows, therefore, that the sixth clause establishes a right in Davis to purchase the property in question.

In conclusion, we will dispose of two additional issues raised by the devisees. We reject their contention that the trial court erred in fixing the fair market value. This amount was the subject of conflicting expert testimony and the sum selected by the chancellor is fully supported by the testimony. Likewise, we reject the devisees' contention that the trial court erred in suppressing a deposition taken of one of their witnesses. The devisees took the out-of-state deposition by telephone without the agreement of opposing counsel or approval of the court, in violation of the provisions of Rule 4:5(b)(7).

Consequently, we hold that there is no error in the judgment below; the trial court's final decree will be

*Affirmed.*