# CIRCUIT COURT OF BEDFORD COUNTY

Luther L. Witt,
Executor of the Will of
Julia Mildred Dooley,
Deceased

v.

Robert H. Dooley et al.

January 25, 1999

Case No. CH98018898-00

BY JUDGE JAMES W. UPDIKE, JR.

The captioned matter is presently before the Court on a suit to obtain construction of the Last Will and Testament of Julia Mildred Dooley. A hearing was conducted in this matter on December 21, 1998, and counsel requested the opportunity to submit memoranda of law. I have now received and reviewed these documents.

Julia Mildred Dooley (Mrs. Dooley) executed the will in question on March 29, 1976, and Mrs. Dooley died on October 7, 1994. The authenticity of this will is not challenged, and a copy of the will was introduced as Plaintiff's Exhibit 1.

According to the undisputed evidence, Mrs. Dooley had six children, four of whom survived her. Donald Ray Dooley, one of the sons who died before Mrs. Dooley, had six children, and Ira G. Dooley, the other son who predeceased Mrs. Dooley, also had six children. However, the number and location of all the heirs of Donald and Ira are not presently known.

Mrs. Dooley's will is very brief, and in addition to provisions concerning her burial, payment of her debts, and nomination of her executor, the will states as follows:

I give, devise, and bequeath all of the rest, residue, and remainder of my estate, real or personal, unto those of my issue who may survive me, share and share alike in fee simple and absolutely.

The question presently before the Court concerns the meaning of the word "issue." More specifically, the question is: Does "issue" mean "children," or does the word include "grandchildren" and "great-grandchildren"?

In this regard, the Supreme Court of Virginia has stated:

Since the infancy of the legal system in this Commonwealth, the word "issue" has meant "heirs of the body" and has been distinguished from seemingly similar words such as "children."

*Hyman v. Glover*, 232 Va. 140, 142, 143, 348 S.E.2d 269 (1986).

The Supreme Court has also stated: "We have defined 'issue' as 'natural descendants of a common ancestor'." *Vicars v. Mullins*, 227 Va. 432, 437, 318 S.E.2d 377 (1984).

In my opinion, the words "issue," "heirs of the body," and "natural descendants of a common ancestor" all include children and grandchildren. Indeed, the Supreme Court of Virginia has specifically ruled: "The word 'issue' includes grandchildren ... ." *Mullins v. Simmons*, 235 Va. 194, 197, 365 S.E.2d 771 (1988).

Ordinarily, the rulings in the above-cited cases would conclude this analysis; however, I find the case at hand to be more complicated.

The word "issue" obviously has a technical meaning of legal significance, and the Supreme Court has stated the following as to the interpretation of such words in a will:

While the general rule is that technical words are presumed to be used technically and words having a definite legal significance are to be understood as used in their definite legal sense, nevertheless when expressions are used in the instrument in conjunction with such technical words which plainly indicate the intention and also that such intention was not in accordance with the technical signification, the manifest intention will control the legal operation of the words.

*Driskill v. Carwile*, 145 Va. 116, 120, 133 S.E. 773 (1926).

The question therefore becomes whether Mrs. Dooley manifested an intention that would control the legal operation of the word "issue." When

making this determination, the court must look to the language of the will itself, and the following guidance has been provided by the Supreme Court:

> The cardinal principle of will construction is that the intention of the testator controls; the problem is to ascertain it. ... A court construing a will must determine the testator's intent from the language of the document, if possible. ...
>
> Extrinsic evidence may never be used in aid of interpretation of a will if the language is clear and unambiguous ... . But there are various ways of expressing the same thought and there are many different shades of meaning which a group of words may convey; individuals differ in their knowledge of grammar and in their manner of expression. These factors often give rise to cases where the language of a will is ambiguous, susceptible to more than one interpretation. In such cases, two classes of extrinsic evidence may be admitted: (1) so-called "facts and circumstances" evidence and (2) so-called "declarations of intention" evidence ... .
>
> The first class involves evidence about the testator, the testator's family and property; the claimants under the will and their relationship to the testator; the testator's hopes and fears; the testator's habits of thought and language; and similar matters. The second class is confined to cases of "equivocation," that is, where the words in the will will describe equally well two or more persons or two or more things. Under this narrow category, extrinsic statements by the testator of his actual testamentary intentions, that is, what he has done or designs to do by the will, are admissible.

*Gillispie v. Davis*, 242 Va. 300, 303-04, 410 S.E.2d 613 (1991) (citations omitted).

Because of the brevity of Mrs. Dooley's will, the only phrase to be analyzed is the phrase "my issue who may survive me, share and share alike." If this phrase is deemed clear and unambiguous, which may be reasonably argued because of the technical, legal meaning of "issue," the extrinsic evidence of either class described in *Gillispie* is inadmissible. If, however, one interprets surviving "issue" as meaning all of Mrs. Dooley's surviving natural descendants, including any surviving children, grandchildren, and great-grandchildren, and that each of any such surviving descendants is as a member of one class to "share and share alike," thereby taking *per capita* rather than *per stirpes*, one can argue that the technical, legal meaning of "issue" becomes strained and therefore unclear and ambiguous.

At any rate, the question of the admissibility of extrinsic evidence in this case is academic at best because such evidence was admitted without objection. Extrinsic evidence is therefore before the court, and in my opinion, this evidence should not be disregarded unless controverted or found to be inherently unreliable. Under the circumstances of this case, I do feel it important that even if an objection to the extrinsic evidence had been stated, reasonable arguments could have been made in support of admitting this evidence.

During the hearing of December 21, 1998, Mrs. Dooley's son-in-law, who is also her executor, and two of her daughters testified unequivocally that Mrs. Dooley wanted the administration of her estate to be simple and without difficulty. They further testified that Mrs. Dooley clearly indicated to them and to the attorney who drafted her will that she wanted her estate distributed equally among her *children* who were living at the time of her death.

According to the testimony, Mrs. Dooley read her will before signing it and specifically asked the attorney about the word "issue." Again, Mrs. Dooley stated that she wanted her estate divided equally among her children who survived her. The witnesses testified that the attorney told her in response that "issue" meant "children." Mrs. Dooley then signed the will.

This testimony from the members of Mrs. Dooley's family was uncontroverted. These witnesses also testified that Mrs. Dooley had very little contact with her grandchildren during her lifetime, and that her estate was not very large. Having viewed these witnesses as they testified, it is my opinion that their testimony was believable and compelling. Moreover, I found their testimony to be supported by the brevity and content of the will itself.

Finally, upon consideration of the extrinsic evidence, it is obvious that through her six children, Mrs. Dooley had a multitude of natural descendants, some of whom it may not be possible to identify or locate. If surviving "issue" is to be defined in the context of this will as all of Mrs. Dooley's surviving natural descendants, and that each of these natural descendants is to receive an equal share of her estate, as would be required, in my opinion, by the phrase "share and share alike," such *per capita* distribution of this apparently modest estate would be a nightmare. I readily acknowledge that the difficulty of distributing an estate under a will is not ordinarily a proper consideration for the court when construing a will. Nevertheless, when there is evidence admitted to this effect, the court can consider whether Mrs. Dooley actually intended such wide-spread, equal distribution of her estate as application of the legal definition of "issue" would require.

I am therefore presented a situation in which a word with technical, legal significance was used, yet compelling extrinsic evidence manifests a contrary

intent. When the intent of the testator is clearly manifested from the will itself, the court is to give effect to such intent. I cannot believe that I should do anything less in this case when the testator's intent is clearly manifested by other evidence admitted.

I therefore construe the word "issue" in the limited circumstances of Mrs. Dooley's will to mean "children," and not "grandchildren." I order her estate, after payment of all debts of her estate, to be distributed to her four children who were living at the time of her death, with each of these four children to receive an equal share.