## CIRCUIT COURT OF WARREN COUNTY

Elizabeth C. Kasabian,
Executrix of the Estate of
Kathryn M. Keeney

v.

Lawrence M. Littleton et al.

February 2, 2000

Case No. (Chancery) No. 99-205

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on January 26, 2000, on the executrix's bill of complaint seeking the Court's direction as to whether the return of an entrance fee paid by the decedent to a continuing care facility, the settlement proceeds of a class action deriving from a security formerly owned by the decedent, and life insurance proceeds are "monetary accounts" within the meaning of a bequest in the decedent's will.

Upon consideration of the evidence, the argument of counsel, and their memoranda of authorities, the Court has decided that the refund of the entrance fee paid to the continuing care facility is a monetary account within the meaning of the will but that the class action settlement proceeds and life insurance payment were not monetary accounts.

### I. Findings of Fact

The following facts are found by the greater weight of the evidence.

Kathryn M. Keeney died testate on December 19, 1998. In 1992, Mrs. Keeney executed a four page will. In Item Third of her will, she made six bequests of personal property and one bequest of $1,000.00. Item Fourth of

Mrs. Keeney's will contains the provision, which the Court is asked to construe, and it provides:

> I hereby request that all currency and monetary accounts of which I may have ownership at the time my Last Will and Testament takes effect to be liquidated and placed in one fund. This will include my Paine Webber Investment Accounts, the liquidation of which I wish to be handled by my Broker, Mrs. Peggy Peters, the contents of my safe deposit box and bank account, located at the Citizens Bank of Maryland, Suitland Road, Forestville, Maryland, and my account number 3029 at the Congressional Credit Union of the House of Representatives, Washington, D.C. This fund is to be divided equally, share and share alike, between the following surviving persons: My nephew, Lawrence M. Littleton; my great-nephews, Alan M. Littleton and Douglas M. Littleton; my cousin, Mary Louise Maroney; my aunt, Eula M. Maroney; and my friend, Gladys A. Brown. The above persons were chosen because my nephew and my great-nephews are my only blood relatives. The others have stood by me through all the years I was in need of help — on call or offering their services at any and all times and were always available. This is my way of saying a special thanks to them.

Item Fifth of the Will was a residuary clause bequeathing all the residuary estate to "my cousin, Mary Louise Maroney, to be disposed of as she sees fit." This case is a dispute between the residuary beneficiary and the legatees named in Item Fourth of the will.

In June 1998, the decedent moved to the Southerlands, a continuing care facility in Warren County, Virginia. Pursuant to the June 18, 1998, The Southerlands Residence and Care Agreement, p. 15, Petitioner's Exhibit B, between Mrs. Keeney and the Southerlands, Mrs. Keeney paid the Southerlands a $60,000.00 entrance fee. The Southerlands Agreement, p. 16, provided that:

> The Southerlands shall maintain in escrow with a bank or trust company, or other approved escrow agent all entrance fees or portions thereof in excess of $1,000.00 per person received by the Southerlands prior to the date the Resident is permitted to occupy a unit in the facility.

After the resident entered the Southerlands, the Agreement did not specify how the Southerlands was to hold the Entrance Fee, but it provided for a refund of a portion of the deposit upon the death of the Resident. Addendum A to the Southerlands Agreement provided in pertinent part that:

[I]n the event of the Resident's death, the refund [of the Entrance Fee] shall be calculated as the Entrance Fee paid to the Southerlands less two percent (2%) thereof for each month after the Effective Date.

Pursuant to Addendum A, The Southerlands refunded the sum of $50,779.72 to the Estate, and this is one of the disputed funds.

The 1999 Inventory listed the following assets of the decedent's estate:

| | |
|---|---|
| Merrill Lynch Account | $180,183.00 |
| Credit Union | 2,457.00 |
| Southerlands Deposit | 50,000.00 |
| Misc. Household Items | 11,215.00 |

In addition to the assets listed on the inventory, the estate received a life insurance payment of $8,589.35 and a class action settlement payment of $1,339.29. The class action settlement payment resulted from a civil action filed in the United States District Court for the Southern District of New York on behalf on investors in Paine Webber Income Properties 8. The proper disposition of the life insurance proceeds and the class action settlement is also in issue.

Mrs. Keeney did own any real estate when she wrote her will in 1992 or when she died. While the exact composition of Mrs. Keeney's estate in 1992 was not proven, it appears that her primary assets in 1992 were those which she expressly mentioned in her will.

## II. *Conclusions of Law*

In *Turner v. Reed*, 258 Va. 406, 518 S.E.2d 832 (1999), the Supreme Court affirmed the Chancellor's determination that while "personal property" was a technical legal term which included both tangible and intangible personal property, in the context that the term was used in the testator's will, it only meant tangible personal property. In its ruling the Supreme Court reviewed the principles which generally apply to will construction:

As we said in *Bowles*, "the paramount rule of will construction is that the intention of the testator controls, unless such intent is contrary to

an established principle of law." 246 Va. at 300, 435 S.E.2d at 130. "The primary consideration and rule of construction is to determine the intention of the testator from the language which he has used." *Penick v. Walker*, 125 Va. 274, 278, 99 S.E. 559, 560 (1919); accord *Coffman v. Coffman*, 131 Va. 456, 463, 109 S.E. 454, 457 (1921). "This intention, gathered from the whole will, must predominate over all technical words and expressions." *James v. Peoples National Bank*, 178 Va. 398, 404, 17 S.E.2d 387, 389 (1941). "Technical rules of construction are not to be invoked to defeat the intention of the maker of the instrument, when his or her intention clearly appears by giving to the words used their natural and ordinary import." *Horne v. Horne*, 181 Va. 685, 691, 26 S.E.2d 80, 83-84 (1943); accord *Walton v. Melton*, 184 Va. 111, 115-16, 34 S.E.2d 129, 130 (1945).

"The intention of the testator, if it can be perceived, is the key that unlocks the door to every will." *Farmers Bank v. Kinser*, 169 Va. 69, 73, 192 S.E. 745 (1937). In Item Fourth of her will, the decedent created a plan by which her next of kin and those "who stood by her" were treated equally.

Mary Louise Maroney was described not as her next of kin, but as a member of the class of persons who had stood by the decedent, and other than the residuary provision, Mary Maroney was not singled out for special treatment under the will. The decedent's will specifically mentioned those items of personal property, tangible and intangible, which the decedent considered significant, and it appears that the bulk of her estate was passing under Items Third and Fourth of her will, and that the residuary clause, Item Fifth, was just a standard provision to pick up anything which she might have overlooked or which was too insignificant to mention specifically.

As the Supreme Court very recently stated in *Gaymon v. Gaymon*, 258 Va. 225 (1999):

> The objective in construing a will is to determine the testator's intent by initially looking to the four corners of the document. Extrinsic evidence may be considered only if the language of the will is ambiguous, that is, susceptible to more than one interpretation. *Gillespie v. Davis*, 242 Va. 300, 303-04, 410 S.E.2d 613, 615 (1991).

The term "monetary account" is not a technical legal term, and its meaning is ambiguous when applied to the facts of this case. Therefore, the Court may consider the nature and extent of the decedent's estate at the time when she wrote her will and her intention as expressed in her will in construing Item

Fourth. *Baliles v. Miller*, 231 Va. 48, 57, 340 S.E.2d 805 (1986). The testatrix did not own any real estate when she wrote her will, and it appears that when she wrote her will, her estate's major assets were her "monetary accounts."

When words used in a will do not have a technical legal meaning, such as "personal property," the words are given their ordinary meaning in the context in which the word is used in the will. Accordingly, the word "money" has been held to include both cash and securities and even the whole personal estate of the decedent. *See Dillard v. Dillard*, 97 Va. 434, 438, 34 S.E. 60 (1899). "The word 'money' or 'cash' as it is used in testamentary instruments is a term of flexible meaning, having either a restricted or a wide signification, according to the context of the will in which it occurs and those surrounding circumstances which the court is bound to take into consideration." 80 Am. Jur. 2d, *Wills*, § 1265; *accord Baker v. Linsly*, 237 Va. 581, 585, 379 S.E.2d 327 (1989).

As noted, the term at issue in this case "monetary account" is not a technical legal term. "[I]n the construction of legal instruments, when the listing of an item with a specific meaning is followed by a word of general import, the general word will not be construed to include things in its widest scope but only those things of the same import as that of the specific item[s] listed." *Turner v. Reed*, 258 Va. 406, 518 S.E.2d 832 (1999) (applying *ejusdem generis* construction principles). The decedent used the word monetary account by which she clearly intended to include a term that was broad enough to embrace bank accounts, security accounts, and similar accounts. The term account has been defined as "a claim or demand by one person against another creating a debtor-creditor relationship." 1A M.J., *Accounts and Accounting*, § 2. Applying this definition, a monetary account would be any claim of the decedent against another for a sum which was either liquidated or specifically quantified, as opposed to an unquantified chose in action. Addendum A to the contract with the Southerlands specified a formula for the determination of the refund of the Entrance Fee, so it was a monetary account within the contemplation of the term used by the testatrix.

In Item Fourth of her will, the decedent used the term "monetary account" and she listed those items which she then owned which comprised her monetary accounts, and she listed her bank account and her stock account by way of both inclusion and illustration. The Paine Webber Account mentioned in the 1992 will was converted into the Merrill Lynch Account which the decedent owned when she died in 1998. The Merrill Lynch Account is clearly a monetary account as contemplated by the decedent.

The class action settlement payment of $1,339.29 was not a monetary account even if it derived from a security investment in the Paine Webber

Fund formerly held by the Decedent, so it would pass under the residuary clause. *See Baker v. Linsly*, 237 Va. 581, 585, 379 S.E.2d 327 (1989) (the term "money" does not include choses in action).

The life insurance proceeds are not a monetary account, and they pass under the residuary clause. *See Yancey v. Scales*, 244 Va. 300, 421 S.E.2d 195 (1992).

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The Merrill Lynch Account is a monetary account as contemplated by the decedent, and it passes under Item Fourth of the Will.

2. The refund of the Southerlands Entrance Fee of $50,779.72 is a monetary account as contemplated by the decedent, and it passes under Item Fourth of the Will.

3. The class action settlement payment is not a monetary account, and it passes under the residuary clause, Item Fifth of the Will.

4. The life insurance payment is not a monetary account, and it passes under the residuary clause, Item Fifth of the Will.