# CIRCUIT COURT OF THE CITY OF NORFOLK

In re Will of
Lois Virginia Huffman

June 27, 2008

Case No. (Civil) CL07-4651

BY JUDGE EVERETT A. MARTIN, JR.

Lois V. Huffman executed her Last Will and Testament on October 7, 2005, Article V of which provided:

> I, Lois Virginia Huffman, give, devise, and bequeath my home and the lot it occupies at 6201 Tidewater Drive, Norfolk, Virginia 23509, to my niece, Margaret Katherine Wiley, only if it has not been sold prior to the time of my death. It is my express wish that the additional lot and one-half next to my home be sold and made part of my residual estate.

On December 14, 2006, the testator entered into a contract to sell the real estate described in Article V of her will for $399,000 (Ex. 1). It is agreed that $250,000 of the gross sales price should be allocated to the house and lot on which it is situated and the remaining $149,000 should be allocated to the adjoining lot and one-half. The testator died on June 17, 2007, and the settlement of the real estate contract occurred on June 29, 2007 (Ex. 5).

The grantors of the deed to the real property were Mr. Vogan, as the executor of the estate, and Margaret Katherine Wiley (hereinafter "Wiley"). The evidence at the hearing on May 27th established that Wiley was named as a grantor at the insistence of the buyer or its title insurance company to clear any defects that may have otherwise existed in the title to the real estate being conveyed. Mr. Ray King, the attorney for the buyer, also testified that, at the

26

time of the testator's death, all conditions that could have excused the buyer's performance had been waived, satisfied, or had lapsed. In his opinion, the buyer was then unconditionally obligated to perform.

The issue to be resolved is whether the real estate had been sold prior to the testator's death. If it had been sold, $250,000 (less pro-rated expenses of sale) pass to her residuary estate.[1] If it had not been sold those proceeds pass to Wiley.

In interpreting a will, the court is to determine the testator's intent, and unambiguous terms should be given their plain meaning. *Gillespie v. Davis*, 242 Va. 300, 410 S.E.2d 613 (1991); *Tiffany v. Thomas*, 168 Va. 31, 190 S.E. 101 (1937). "Sold" is, of course, the past tense of "sell," the primary definition of which is "to give up or make over to another for a consideration; dispose of to a purchaser for a price." *Webster's Encyclopedic Unabridged Dictionary* (1989). I do not believe the word is ambiguous. Until the deed and the consideration have been exchanged there has been no sale.

Furthermore, it is difficult to believe the testator intended "sold" to have different meanings in the first and second sentences of Article V. In the second sentence, she clearly meant the word to mean "exchanged for money."

If the word should be considered ambiguous, I believe the evidence supports the same results. Wiley received the largest specific bequest, and she was to receive the testator's most valuable asset if it had not been sold prior to her death. Wiley often rendered assistance to the testator and spoke to her frequently. The testator was not particularly close to her other nieces and nephews. The testator had an eighth-grade education and was of modest means, excluding her real estate. She was worried about her ability to afford long term assisted living and nursing care if that should become necessary. She contracted to sell the real estate to pay for better care than what she was receiving at Tandem House. If she did not need the money for assisted living and nursing care, she intended that Wiley, her favorite niece, receive the land. Thus I do believe she intended "sold" to mean "exchanged for money."

The residuary beneficiaries rely on the doctrine of equitable conversion. However, none of the cases they rely on involve the interpretation of a will, and the doctrine "is always withheld if it should appear to foil the intent of the

---

[1] There were two charitable organizations that are each entitled to 25% of the residuary estate. Each has made an appearance. The remaining 50% of the residuary estate is to be shared among the decedent's thirteen nieces and nephews, of whom Wiley is one. If I correctly understand the *dramatis personae*, ten of the nieces and nephews (including Wiley) have appeared. The other three have been served.

testator. . . ." *Robinson v. Lee*, 205 Va. 363, 366, 136 S.E.2d 860, 862 (1964); *Marcy v. Graham*, 142 Va. 285, 293, 128 S.E. 550, 555 (1925). As the issue has not been raised, I need not decide if the doctrine could be applied here, as this is a legal, not an equitable, claim. *Hart v. Darter*, 107 Va. 310, 58 S.E. 590 (1907).

I conclude Wiley is entitled to the proceeds of the sale of the house and its lot less the proportionate share of the expenses of sale.